## GEORGE McCORMACK, Appellant, v. ADAM E. MILLER.

### Division Two, February 6, 1912.

1. **ACCRETIONS: River as Boundary: Title.** A running stream forming the boundary between lands otherwise contiguous, continues to be such boundary line, although the channel may change, provided the change is by the gradual erosion and cutting away of its banks, and not by a sudden leaving of the old channel and the forming of an entirely new and different channel. And where the plaintiff owned land that was bounded by a running stream, and the stream gradually cut away a part of it and formed it on the other side of the stream up against defendant's lands, the defendant is entitled to all additions to his lands along the river so made, as accretions thereto, though such "made" land comes within the descriptions contained in plaintiff's deed at the time he purchased.

2. ———: **Length of Time in Forming: Identity.** In determining whether a riparian owner has title to land by accretion, the length of time in which it was forming is not important. If it was formed by a gradual, imperceptible deposit of alluvion, it is accretion, and becomes a part of the land against which it is deposited; but if the stream changes its course suddenly and in such manner as not to destroy the integrity of the land or so that the land can still be identified, it is not accretion and the boundary line remains the same as before the change of the channel.

Appeal from Louisiana Court of Common Pleas.—
*Hon. David H. Eby,* Judge.

AFFIRMED.

*Pearson & Pearson* for appellant.

If the instruction in the nature of a demurrer to the evidence, was given upon the theory that the land sued for in the petition, and claimed and fenced by the defendant, was in the nature of accretions to his, defendant's, land, the instruction is erroneous; and for that reason the judgment should be reversed and the cause remanded. (1) In order to entitle the adjoining property holders to the right of possession of land left bare by the receding water, recession must be slow, gradual and imperceptible; in case of a sudden and sensible recession of waters the ownership will not be changed. 1 Am. & Eng. Enc. Law, p. 473. Accretion is a process of gradual and imperceptible increase of land caused by the deposit of the earth as sediment thereon by contiguous waters. 1 Am. & Eng. Enc. Law, p. 467; Cooley v. Golden, 117 Mo. 48; Busen v. Mowva, 61 Mo. 345; Hahn v. Dawson, 134 Mo. 590. There has been some conflict of authority as to the exact meaning of the word "imperceptible" which appears in the definition. It has generally been held that imperceptible increase means an increase so gradual and insensible that its progress in any moment of time may not be perceived. On the other hand the position has been taken, less reasonable, that imperceptible refers to the final result of accretion. 1 Am. & Eng. Enc. Law, p. 469; Doe v. Allen, 4 Dev. & B. (N. C. A. R.) 62; 3 Am. & Eng. Enc. Law, 523; Benson v. Morrow, 61 Mo. 348. Where the river suddenly changes its course, or deserts its original channel, the boundary remains in the middle of the old channel. Rees v. McDaniel, 115 Mo. 152; 1 Am. &

Enc. Law, p. 473, sec. 2. There is very strong, clear and substantial evidence in this record, showing that Salt River has entirely forsaken its channel and formed an entirely new channel. For that reason, under the law, the boundary line so far as Salt River is concerned, of the land that McCormack bought, has not been changed. The evidence also shows very conclusively, that the changes made by Salt River in its channel, were very suddenly made; that the river deserted its original channel; and the boundary line of the McCormack tract of land, it being the land of which the property in controversy is a portion, so far as the river is concerned, remains where the river ran in 1891. (2) It is fundamental law of accretions that the lands to which they attach must, to entitle their owner to the accretions, be bounded by the river or stream. Any separation of the claimant's land from the alluvion by the lands of another, however narrow the intervening strip may be, or whatever the size of claimant's tract behind it, precludes his right to the accumulated alluvium. Sweringen v. St. Louis, 151 Mo. 348. The doctrine of accretions will not permit the jumping of a wide creek, so that, if the creek always separated the "made" land from the shore, it cannot be said to be an accretion to the shore, that is, to be joined on to and becoming a part of the shore land. DeLassus v. Faherty, 164 Mo. 361. The evidence in this case is clear on the point that the northern portion of the land in controversy, never was bounded on the north by Salt River; but that it was bounded by the line dividing sections 24 and 25. It is also clear from the evidence there was a space of ground between the southern bank of Salt River and the section line dividing sections 24 and 25, just north of the ground in controversy.

*Robt. A. May* for respondent.

Accretion is the process of gradual and imperceptible increase of land, caused by the deposit of earth, sand, or sediment thereon by contiguous waters. The land thus made is called alluvion.     Where considerable quantities of soil are, by a sudden action of the water, taken from the land of one and deposited upon, or against the land of another, they are called avulsion. That ground which a river has added to your estate by alluvion becomes your own, by the law of nations; and that is said to be alluvion which is added so gradually that no one can judge how much is added in each moment of time.   1 Am. & Eng. Ency. Law, 467; Nebraska v. Iowa, 143 U. S. 359, and 145 U. S. 519. The test of what is gradual as distinguished from what is sudden, seems to be, that though witnesses are able to perceive from time to time that the land has encroached on the sea line, it is enough if it was done so that they could not perceive the progress at the time it was made.   Angell on Tide Waters (1 Ed.), 71; St. Clair Co. v. Lovingston, 23 Wall. (U. S.) 46. The riparian owner is entitled to the land formed by gradual and imperceptible accretions from the water, regardless of the cause which produced it. Tatum v. St. Louis, 125 Mo. 654; Benson v. Morrow, 61 Mo. 350; Rees v. McDaniel, 115 Mo. 152. It naturally follows from the above observations that in order to entitle plaintiff to the land in controversy one of two things must have happened; either the channel of the river must have changed its course so as to cut off plaintiff's land in a body and attach it to defendant's land with its identity unchanged, or it must have been taken, as the bank caved in, and the identical particles deposited on the other side of the river, adjoining defendant's land.   The claim that either was done in this case is absurd.   It is well settled law that, where after an original survey of land on a river has

been made, part of the same is washed away and afterwards new land re-forms within the limits of such survey, such land does not necessarily belong to the owner of the survey. If such remade land consists of accretions to the land of another, the latter may claim it, although it extended beyond his lines and into the survey so partly washed away. Naylor v. Cox, 114 Mo. 232.

KENNISH, J.—This is an appeal from a judgment of the Louisiana Court of Common Pleas of Pike county, in an ejectment suit. The plaintiff sued for the possession of about fifteen acres of land in said county. The answer was a general denial. The case was tried at the May term, 1908, and at the close of plaintiff's case the court gave an instruction in the nature of a demurrer to the evidence. There was a verdict and judgment accordingly, and plaintiff appealed.

It appears from the uncontradicted testimony that in the year 1891 appellant purchased "all of that part of the north half of section 25, township 55, of range 3 west, except what is known as 'Sugar Creek Island,' containing 160 acres more or less, which lies south of Salt River," in Pike county, this State. He immediately went into possession of said land, and has occupied and cultivated it ever since. At the date of said purchase Salt River in part formed the northern boundary of said land. The land now owned by respondent, but then owned by his grantor, lay directly opposite and across the river, the river being the southern boundary thereof, except that in its northeasterly course the river crossed the north line of said section 25, leaving the section line, for a short distance east from that point, as the boundary line between the two tracts of land. The general course of the river was in a southerly direction, but near where it reached appellant's land it made a bend and changed to an easterly course, bearing a little to the north. Appellant's

land was underlaid by a stratum of sand, at a depth of about eight or ten feet, and in times of high water the river along the bend at appellant's land washed away the sub-stratum of sand under its south bank and caused the land to cave in and be washed away. Sometimes one flood would cause the river to encroach upon appellant's land for a distance of from twenty to seventy feet. The channel moved to the south, keeping pace with the washing away of the southern bank, and as the channel moved south land was formed on the other side of the river, on the southern boundary of respondent's land. The fifteen-acre tract in controversy is land which at the commencement of the suit lay on the north side of the river. In 1891 the site of the land now in dispute was within the boundary lines of the land then purchased by appellant, but in the seventeen years intervening the land so purchased had been washed away and the land now on the north side of the river had re-formed as before described.

A number of witnesses testified in behalf of plaintiff, including plaintiff himself, and their testimony was, without exception, to the effect that the river had undermined and cut away land on the south side and formed land on the north side as heretofore described. Appellant introduced his deed in evidence and relied upon his title thereby acquired. No question of title by prescription is presented by the testimony.

The respondent, as riparian owner on the north side of the river, was entitled to all additions to his land along the river by the process of accretion. [Benson v. Morrow, 61 Mo. 345; Rees v. McDaniel, 115 Mo. 145; Hahn v. Dawson, 134 Mo. 581; 1 Farnham on Water and Water Rights, sec. 69.] A running stream, forming the boundary line between contiguous lands, continues to be such boundary line, although the channel may change, provided the change is by the gradual erosion and cutting away of its banks and not by a sud-

den change leaving the old channel and forming an entirely new and different channel. [Cooley v. Golden, 117 Mo. 33; Frank v. Goddin, 193 Mo. 390; Jefferis v. East Omaha Land Co., 134 U. S. 178; 3 Farnham on Water and Water Rights, sec. 847.] In determining whether a riparian owner has title to land in controversy by accretion, the length of time in which it is in course of formation is not of importance. If it is formed by a gradual, imperceptible deposit of alluvion, it is accretion; but if the stream changes its course suddenly and in such manner as not to destroy the integrity of the land in controversy and so that the land can be identified, it is not accretion and the boundary line remains as before the change of the channel. [Benson v. Morrow, 61 Mo. 345; 29 Cyc. 348-349; Coulthard v. Stevens, 84 Iowa 241; Wallace v. Driver, 61 Ark. 429; County of St. Clair v. Lovingston, 90 U. S. 46.]

Applying the foregoing well established principles of law to the facts of this case, there can be no doubt as to the correctness of the ruling of the trial court in directing a verdict for the defendant. Accordingly the judgment is affirmed. *Ferriss, P. J.,* and *Brown, J.,* concur.