YUTTERMAN *v.* GRIER.

Opinion delivered April 13, 1914.

1. ACTIONS—TRANSFER TO EQUITY—MULTIPLICITY OF SUITS.—A suit to apportion lands formed by accretion, where a number of parties are interested and made parties to the action, may be transferred to equity. (Page 369.)

2. ACCRETIONS—RIGHT OF RIPARIAN OWNER.—Land formed on a river bank will be held to be an accretion, although formed almost entirely during an overflow, and although the caving in of the opposite bank was observable at times. The test is not the rapidity of the change, but whether the land formed can be identified as the land of a former owner. (Page 373.)

Appeal from Sebastian Chancery Court, Fort Smith District; *J. V. Bourland,* Chancellor; affirmed.

*Winchester & Martin,* for appellant.

1. This is an action in ejectment, cognizable at law, in which court plaintiff brought his suit, deliberately, and in which court he ought to have been required to abide the issue. The case does not present "the peculiar equities" essential to the jurisdiction of a court of equity. It is not a case of disputed boundaries, as in *Deidrich* v. *Simmons,* 75 Ark. 400, but it is a case presenting a question of fact, *i. e.,* whether or not the land

in question is accretion, to be determined from the testimony of witnesses, and in the determination of which appellant was entitled to the verdict of twelve men rather than the finding of one man, the chancellor.

2. The land in question was not an accretion. The change of the course of the river was sudden and radical—an avulsion—with the result that the east boundary of section 13 was not changed, did not follow the river into its new channel.

"The river line is a natural boundary, and its gradual advance or retreat carries the owner's line with it, except in case of an avulsion, or sudden and perceptible change of the water course, in which latter case the line remains at the old water line, and becomes fixed by it, not subject to further change by the caprice of the river." 73 Ark. 199-202; 53 Ark. 314; 61 Ark. 429; 138 U. S. 226. See, also, 143 U. S. 359; Gould on Waters, § 159.

*H. C. Mechem,* for appellee.

1. Appellant's sole defense at the former trial was that the land claimed to be an accretion was not properly divided. His appeal was not from the finding of the court that the land was accretion, but from the finding upon the question of its division. He should not be permitted to shift his position so as to present a new issue at the second trial, namely, that the land was the result of an avulsion. 31 Cyc. 423, note 16; 83 N. W. (Neb.) 733; 81 App. Div. 140.

2. The case was properly transferred to equity, under the rule announced by this court in *Malone* v. *Mobbs,* 102 Ark. 542. See, also, 75 Ark. 404; 3 Pomeroy, Eq. Jur., § 1384; 12 Pet. 734; 17 Pick. 41; 135 App. Div. 365; 56 Cal. 622.

3. Under the evidence, the land in dispute is an accretion, and not an avulsion. 61 Mo. 352; 143 U. S. 359; 223 U. S. 605; 56 Law. Ed. 570; 59 N. W. 550; 84 Ia. 241; 101 Ia. 625; 3 Tex. Civ. App. 634; 134 U. S. 178; 99 N. E. 850; 122 N. W. 233.

McCULLOCH, C. J.  This controversy involves the title to lands alleged to have been formed by accretion on the west bank of the Arkansas River in Sebastian County, Arkansas.

Plaintiff, Grier, instituted the action against defendant, Yutterman, in the circuit court of Sebastian County, Fort Smith District, to recover possession of what he claims is the accretion to his land.

The circuit court rendered judgment in his favor for some of the land claimed, but apportioned the accretion according to the wrong basis, and he appealed to this court.  The judgment was reversed on account of that error.  102 Ark. 433.

As the pleadings then stood there was no denial of the allegation that the lands in controversy were formed by accretion.  On the remand of the case for a new trial, the defendant amended his pleadings so as to deny the allegation that the lands were formed by accretion and to raise an issue on that question.

The plaintiff thereupon amended his complaint so as to show that other land owners fronting on the river were interested in the apportionment of the accretion and moved that they be made parties and that the cause be transferred to equity.

This was done over the objections of the defendant and is one of the principal grounds urged here for the reversal of the decree.

The cause was heard upon the pleadings and the depositions of numerous witnesses, and the court found that the lands formed along the original shore-line were accretions and belonged to the riparian owners, and appointed a commissioner to divide the lands according to the rule laid down by this court in *Malone* v. *Mobbs,* 102 Ark. 542.

The question of the correctness of the court's ruling in transferring the cause to equity is not free from doubt.

In *Malone* v. *Mobbs, supra,* no objection was made to the jurisdiction of the chancery court, and we pretermitted any decision of that question, holding that no ob-

jection having been made to the cause proceeding in equity the decree could not be attacked here.

We held in *Deidrich* v. *Simmons,* 75 Ark. 400, "that the mere fact that boundaries are in dispute is not of itself sufficient to authorize the interference of equity; and that courts of equity will not interpose to ascertain and settle boundaries unless, in addition to the confusion and dispute over the boundaries, some other peculiar equities are shown."

In *Brizzolara* v. *Fort Smith,* 87 Ark. 85, we held that a court of equity will (quoting from Mr. Pomeroy) "take cognizance of a controversy, determine the rights of all parties, and grant the relief requisite to meet the ends of justice, in order to prevent a multiplicity of suits, where a number of persons have separate and individual claims and rights of actions against the same party, but all arise from the same common cause, are governed by the same legal rule, and involve similar facts, and the whole matter may be settled in one action, there being a community of interest between them in the question at issue and in the remedy. (1 Pomeroy's Equity Jurisprudence (3 ed.), § § 255, 269.)"

In *Ellsworth* v. *Hale,* 33 Ark. 633, the court decided that "to warrant the interference of chancery on the ground, alone, of preventing multiplicity of suits, the same rights should be claimed by different persons against one, or by one against many."

Whether the facts of this case are sufficient to bring it within the rule which permits a court of equity to assume jurisdiction in order to avoid multiplicity of suits we will refrain from deciding, for we are of the opinion that the decision was correct upon the undisputed evidence and that appellant can not, for that reason, complain of the transfer to equity.

It is not contended that the court did not apportion the alleged accretion according to the rule established by this court in *Malone* v. *Mobbs, supra.* The only contention as to the facts is that the proof does not establish that the land was formed as accretion.

But we are of the opinion that the proof, not only establishes the fact, but that the testimony is undisputed on that issue. The plaintiff introduced a large number of witnesses who were familiar with the lands along the river bank in that locality and had observed them for a great many years, and the testimony of those witnesses thoroughly establishes the fact that the land in controversy was formed by a gradual shifting of the shore-line at that place, the banks on the east side of the river gradually caving in and the deposit on the other side and the recession of the waters gradually forming the lands in controversy on the west side of the river. The only dispute is that some of defendant's witnesses testified that the greater part, if not all, of the land was formed during the overflow of 1898, and that the change was perceptible, in that the caving on the east side was perceptible. Some of the witnesses testified that they saw or heard the bank caving in. This circumstance does not, we think, take the facts of the case out of the operation of the general rule applicable to lands formed by accretion. The law on that subject is well settled.

In *Wallace* v. *Driver*, 61 Ark. 429, Judge BATTLE, speaking for the court said:

"The water boundaries of land on running streams * * * always remain the same when they change gradually, as by the process of accretion or attrition. They gradually shift as the water recedes or encroaches; and the area of the riparian owner's possession varies as they change by this process. Whatever constituted them at first still constitutes them so long as it remains permanent or shifts gradually and imperceptibly. Hence, land formed by alluvion, or the gradual and imperceptible accretion from the water, and land gained by reliction, or the gradual and imperceptible recession of the water, belong to the owner of the contiguous land to which the addition is made. This rule has been vindicated by some one on the principle 'that he who sustains the burden of losses and of repairs, imposed by the contiguity of water, ought to receive whatever benefits

they may bring by accretion.' * * * In order to constitute
an accretion, it is not necessary that the formation be
indiscernible by comparison at two distinct points of
time. It is true that it is an addition to riparian land,
'gradually and imperceptibly made by the water to which
the land is contiguous;' but the true test 'as to what is
gradual and imperceptible in the sense of the rule is that,
though the witnesses may see from time to time that
progress has been made, they could not perceive it while
the process was going on.''

The court was there speaking in general terms and
it is not literally correct to say that the rule of accretion
does not apply if any part of the process is perceptible.
For instance, the change of the bed of the river takes
place by attrition, causing the caving of the banks on one
side and by accretion, the act of deposit, on the other
side, or elsewhere along the stream. Therefore, the fact
that the caving of the banks on one side is observable at
any given time does not prevent the formation on the
other side of the river from being an accretion which
gives title to the land to the riparian owner. This point
is emphasized by Mr. Justice Brewer in delivering the
opinion of the Supreme Court of the United States in
*Nebraska* v. *Iowa,* 143 U. S. 359, in the following lan-
guage:

"The accretion, whatever may be the fact in respect
to the diminution, is always gradual and by the imper-
ceptible deposit of floating particles of earth. There is,
except in such cases of avulsion as may be noticed here-
after, in all matters of increase of bank, always a mere
gradual and imperceptible process. There is no heaping
up at an instant, and while the eye rests upon the stream,
of acres or rods on the forming side of the river. No
engineering skill is sufficient to say where the earth in
the bank washed away and disintegrating into the river
finds its rest and abiding place. The falling bank has
passed into the floating mass of earth and water, and the
particles of earth may rest one or fifty miles below, and
upon either shore. There is, no matter how rapid the

process of subtraction or addition, no detachment of earth from the one side and deposit of the same upon the other. The only thing which distinguishes this river from other streams, in the matter of accretion, is in the rapidity of the change caused by the velocity of the current; and this in itself, in the very nature of things, works no change in the principle underlying the rule of law in respect thereto.''

The Supreme Court of Missouri, in a case decided in 1875, which is often referred to, had this to say on the subject, which we think is an important and correct statement of the law:

''The term 'avulsion,' on the one hand, and 'gradual and imperceptible accretion,' on the other, are used by writers on alluvion to contradistinguish a sudden disruption of a piece of ground from one man's land to another's, which may be followed and identified, from that increment which slowly or rapidly results from floods, but which is utterly beyond the power of identification. * * * The length of time during formation is not material.'' *Benson* v. *Morrow,* 61 Mo. 345.

The Supreme Court of Iowa, in the case of *Coulthard* v. *Stevens,* 84 Iowa, 241, quoted the Missouri court with approval and adopted the same rule.

The Supreme Court of Illinois, in *Bellefontaine Imp. Co.* v. *Niedringhaus,* 181 Ill. 426 (quoting from the syllabus), said:

''Where a considerable tract of land is, by the violence of a stream, and in consequence of its cutting a new channel, separated from one tract of land and joined to another, but in such a manner that it can still be identified, the ownership of such separated tract remains unchanged; but when the change is gradual and imperceptible, except by comparisons made at different points of time, the boundary of the deprived riparian owner remains, and follows the thread of the stream.''

The Supreme Court of Missouri, in a recent case, followed the rule established by the former case we have quoted from, and emphasized, as in the former case, the

test of identity of the new-made land, rather than the length of time in which it was formed. The court said:

"In determining whether a riparian owner has title to land in controversy by accretion, the length of time in which it is in course of formation is not of importance. If it is formed by a gradual, imperceptible deposit of alluvion, it is accretion, but, if the stream changes its course suddenly, and in such manner as not to destroy the integrity of the land in controversy and so that the land can be identified, it is not accretion, and the boundary line remains as before the change of the channel." *McCormack* v. *Miller,* 239 Mo. 463, 144 S. W. 101.

Tested by these rules we are clearly of 'the opinion that the land involved in this controversy was accretion and that the material facts in relation to the formation of the land are undisputed.

If it be conceded that the land was formed during the overflow of one season and that the caving of the bank on the east side of the river was perceptible at times, the process of accretion on the west bank was gradual and imperceptible within the meaning of the law, which cast the title upon the riparian owner.

Decree affirmed.