CLARA M. CRAMER, Appellant, v. MELANCHTHON W. PERINE and MARGARET PERINE, His Wife, Respondents.

Fourth Department, May 4, 1921.

**Deeds — boundary described as running to stream and thence down stream — thread of stream boundary line — accretions — rule for dividing between adjoining owners.**

Where a deed describes the boundary line of the land as running to a creek and thence down the creek, along the bank thereof, the grantee takes title to the center or thread of the stream, in the absence of words of restriction or limitation.

As between adjoining landowners on non-navigable streams each owner takes title to accretions in proportion to his line on the margin in front of his upland according to straight lines drawn at right angles between the side lines of his land on the shore and the center line of the stream.

Accretions, under the common-law rule applicable in this State, belong to the uplands against which they are laid down and ownership thereof passes under the deed to the uplands.

APPEAL by the plaintiff, Clara M. Cramer, from an interlocutory judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Erie on the 11th day of August, 1919, dismissing the complaint on the merits.

*George H. Wade,* for the appellant.

*J. Neil Mahoney,* for the respondents.

LAMBERT, J.:

This action is in ejectment. In 1904 one John L. Dow was the common owner in fee simple of the premises owned respectively by the plaintiff and defendants and the same were bounded northwesterly by Cazenovia creek, as delineated on a map and survey filed in the year 1888 in the county clerk's office of Erie county and identified under cover 330. The lands, the title to which passed to the defendants through mesne conveyances, were conveyed by Dow, January 22, 1904. This description carried title to the thread of Cazenovia creek. In February, 1904, Dow conveyed the lands to which the plaintiff succeeded to the title, and in its southerly descrip-

tion ran to the waters of Cazenovia creek and thence northwesterly down the creek, and along the bank thereof, to the lands of the respondents.

At the time of the conveyances by Dow, the proof is silent as to the extent of accretions made between the creek and the northwesterly boundary of the premises of the parties. It does appear that the lands in dispute were made by slow process of accretion. At the time of bringing this action it is conceded that a strip of land had been made northwesterly of the premises of the parties, at least 300 feet in width and extending northwesterly of the lands described in their respective titles. The radius of the new bank of the creek far exceeds the existing one at the time of the Dow conveyances in 1904. This is the land in dispute.

The plaintiff, by the judgment rendered in this case, has been given all the lands in dispute northerly and northwesterly of a continuation of the southeasterly boundary of the defendants' premises. The defendants seek to sustain this judgment upon the theory that the plaintiff's premises have been cut off from common ownership later than the defendants' title and by a description which, it is contended, limits the title of the plaintiff's premises to the bank of Cazenovia creek. This position is untenable. The southerly boundary of the plaintiff's premises carries the title to the waters of the creek and thence down the creek, along the bank thereof, etc. Under all the authorities to which our attention has been drawn, this description carried the plaintiff's title to the center of the creek in the absence of words of restriction or limitation. (*Seneca Nation of Indians* v. *Knight*, 23 N. Y. 498; *Gouverneur* v. *N. I. Co.*, 134 id. 355; *Matter of City of New York* [*West Farms Road*], 212 id. 325.)

It is the claim of the appellant that inasmuch as her title extends to the thread of the creek, she is entitled to have her northwesterly corner established on the made or new bank of the creek, at a point which will give the present owners the same relative percentage of distance on the new bank as was conveyed to them and their respective grantors by the common grants in 1904. We are of the opinion that the contention of the appellant should be upheld. (*O'Donnell* v. *Kelsey*, 10 N. Y. 412.) It is conceded by both parties that

their respective descriptions of property do not extend to the new bank of the creek and that title to the accreted lands is obtained through the doctrine of the common law. There is no statute to which our attention has been drawn governing the question.

The latest expression upon this subject by the Court of Appeals is contained in *Calkins* v. *Hart* (219 N. Y. 145). A general rule is by that case declared applicable to non-navigable streams and inland lakes, as follows: " In this State and in most of other jurisdictions where the common-law rule obtains, the rule has been established that as between adjoining owners on non-navigable streams and rivers, each owner takes title *ad medium filium aquœ*, in proportion to his line on the margin in front of his upland according to straight lines drawn at right angles between the side lines of his land on the shore and the center line of the stream."

The rule here announced in the Court of Appeals has been applied many times in this State. (*People ex rel. Cornwall* v. *Woodruff*, 30 App. Div. 43; affd., 157 N. Y. 709; *Mulry* v. *Norton*, 100 id. 434, and many more cases that might be cited.)

The accretions under the common-law rule applicable in this State belong to the uplands against which they are laid down and ownership thereof passes, under the deed, to the uplands. (*Mulry* v. *Norton*, 100 N. Y. 434.)

Neither the evidence nor the findings in this case point out a location upon the new bank of the creek which would permit a definite finding as to the proportion of the accreted lands which should be awarded to the parties respectively. For this reason it is necessary to reverse the judgment and send the case back to the trial court for findings upon which a judgment can be rendered, giving to these parties such a portion of the accreted lands as they are entitled to under the rule above indicated, with costs to the appellant to abide the event.

All concur.

Judgment reversed and new trial granted, with costs to appellant to abide event. The finding of fact contained in the decision and numbered III is disapproved and reversed.