JOHN MARTIN and Others, Appellants, *v.* THOMAS W. BEATTIE and Others, Respondents.

Fourth Department, March 9, 1932.

*Eugene Van Voorhis*, for the appellants.

*Richard E. White* and *John R. Fanning*, for the respondents Beattie and Bauman.

*Frank J. Dinse*, for the respondent Fred J. Slater.

TAYLOR, J. This action is brought to determine claims to real property (Real Prop. Law, art. 15). The tract giving rise to the dispute is located in lot No. 43 immediately north of the easterly portion of lot No. 52 in the first division of lots in township 2 in the short range of townships in the Phelps and Gorham purchase in the town of Greece, Monroe county. The tract is in and/or contiguous to a certain Buck pond. This " pond " is composed in its central part of a pool of clear water and otherwise of marshy

land surrounding the pool. The portion of the pond involved in the litigation is marsh land. We shall speak of appellants and defendants Fetherly, who are similarly situated, as "plaintiffs" and the remaining parties to the action as "defendants." Plaintiffs claim under a deed dated January 23, 1860, which will be called "Deed No. 1," and subsequent mesne demising and devising documents, which describe the lands as "being twelve acres more or less in said piece or strip of land and which is bounded as follows, viz., east by the west line of land owned by the heirs at law of Martin Beattie [also spelled ' Beaty '] on the east side of said lot, south by the south line of said lot, west so far as to extend to the west line of lot No. Fifty-two in said township, and north by Buck Pond, it being a narrow, irregular strip of land on the south side of said pond." The location of the easterly boundary of this tract is one of the mooted questions. The defendants claim title to certain of the lands in lot 43 by adverse possession, and to certain other portions of that lot through a chain of title starting with a deed (hereinafter called deed No. 2) dated April 17, 1855, conveying lands " bounded as follows, viz., east and south by the lines of said lot, west by the east line of * * * Lot No. 52, of the first division of lots and Buck Pond and north by a line parallel with the south line of said Lot No. 43 and four chains and 25 links north of the north line of said lot No. 52." The westerly and southerly boundary lines of the tract thus conveyed are matters of controversy.

As to the dispute regarding record titles plaintiffs contend that the westerly boundary of defendants' lands in dispute, being the easterly boundary of plaintiffs' lands, is defined by an extension of the easterly line of lot 52 northerly four and twenty-five one-hundredths chains to Buck pond. Defendants claim that the dividing line is the easterly " Old High Water Line " of Buck pond, as it appears upon defendants' map, Exhibit 18, west of said extended line of lot 52. We accept the theory of the defendants as to this. Deed No. 2 reads: " East and south by the lines of said lot " (No. 43). As to the south boundaries, this may well mean not only the south line of lot 52 extended easterly, but a portion of the north line of lot 52 running westerly from the east line of that lot. The description in this deed goes on to read further: " west by the east line of Lot No. 52 * * * *and Buck Pond.* " (Our italics.) If the northwesterly corner of this tract were at the point of intersection of the east line of lot 52 extended northerly and a line drawn parallel with the north line of lot 52 and four and twenty-five one-hundredths chains north thereof — as plaintiffs claim — the tract, as the record stands, could not possibly be bounded on the west *by Buck*

*pond* as the deed has it. The map placed in evidence by defendants (Exhibit 18) — a sketch of a part of which appears at the end of this opinion — clearly shows the old high-water line to be approximately 500 feet westerly of such northwesterly corner; and plaintiffs' own map (Exhibit 15) shows that corner to be in the " woods " and the pond several hundred feet westerly. That the old high-water line, as shown on Exhibit 18, should be adopted as marking the westerly line of defendants' lands and the easterly line of plaintiffs' lands, in so far as the dispute is concerned, seems reasonably indicated by deed No. 2, by the testimony of Lewis Y. McConnell and by two deeds in evidence, dated March 24 and 25, 1871, from Martin Beattie to James Beattie, and recorded in Monroe county clerk's office in liber 242 of Deeds, page 449, and liber 245 of Deeds, page 10, respectively. Plaintiffs are not aided by the statement in deed No. 1 that their lands are " bounded as follows, viz.: east by the west line of land owned by the heirs-at-law of Martin Beaty [Beattie] on the east side of said lot " (43). For the record does not disclose with any degree of certainty who the " heirs-at-law of Martin Beaty " are nor what lands they owned on the east side of lot 43.

We agree with plaintiffs as to the lands claimed by defendants by adverse possession. Concededly, plaintiffs have record title to all the lands west of the old high-water line and north of the south line of lot 43. If the testimony presented by defendants as to acts and conduct tending to establish adverse possession could fairly be held applicable to lands north of the north line of lot 52, title to lands in Buck pond, even to its center, might perhaps be found in defendants. (*Gouverneur* v. *National Ice Co.*, 134 N. Y. 355; *Cramer* v. *Perine*, 197 App. Div. 218; appeal dismissed, 236 N. Y. 667; *Calkins* v. *Hart*, 219 id. 145.) But the testimony of defendants' witnesses in this behalf not only fails to show operations in lot 43, but in some instances is squarely to the effect that there were no such operations. For example, defendant Thomas W. Beattie, who had known the farm for over sixty years, testified that he and his father cultivated ten acres of hard land east of Island Cottage road (this road being all easterly of the old high-water line) but that they never cultivated west of that road. Furthermore, the testimony of defendants' witnesses James E. Connolly and Frank Connolly shows that, so far as the Bauman and Beattie lands on the south side of lot 43 were concerned, the defendant owners and their predecessors cultivated and performed any other possessory acts down to the marsh and no farther; and defendants' map (Exhibit 18) shows that the edge of the marsh land is well south of the south line of lot 43.

The judgment should be modified as indicated in this opinion, and as modified affirmed. Defendant Slater should have trial costs and costs of this appeal against plaintiffs; otherwise no trial or appeal costs are awarded. Findings of fact Nos. 4 and 5 are reversed; conclusion of law No. 1 modified, conclusion of law No. 2 reversed and new findings and conclusions made.

In the appended rough sketch "A" and " B " mark the land conveyed by " Deed No. 2." "A" is the tract under dispute as

to record title and " C " the lands of defendant Daniel H. Bauman located in lot 52.

All concur. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and CROSBY, JJ.

Judgment modified in accordance with the opinion and as modified affirmed, with costs to respondent Slater. Certain findings of fact and conclusions of law disapproved and reversed and new findings and conclusions made.