PETER BRATSCHI ET AL. v. ADAM LOESCH ET AL., Appellants.—51 S. W. (2d) 69.

Division Two, June 10, 1932.*

*Irwin & Bushman* for appellants.

*NOTE: Opinion filed at October Term, 1931, April 8, 1932; motion for rehearing filed; motion overruled at April Term, June 10, 1932.

*Ira H. Lohman* and *H. P. Lauf* for respondents.

COOLEY, C.—Action to determine title to real estate, brought in the Circuit Court of Cole County under present Section 1520, Revised Statutes 1929, 2 Mo. Stat. Ann., p. 1683, Section 1970, Revised Statutes 1919, old Section 650, Revised Statutes 1899, Section 2535, Revised Statutes 1909. The trial, which was to the court without a jury, resulted in a judgment for plaintiffs adjudging and quieting title in them and that defendants have no title or interest. Defendants appealed.

The land in dispute is a narrow strip, called by most of the witnesses a gravel bar, lying between the thread or center of the stream of Moreau Creek and a line on the right bank of said creek which defendants claim is plaintiffs' boundary. Defendants own lands opposite said strip on the left side of the Moreau. By their answer they denied plaintiffs' title to the disputed strip and claimed it themselves by adverse possession. Plaintiffs claimed to have record title and also title by adverse possession and were in possession when suit was brought.

Moreau Creek is admittedly a non-navigable stream. At the place in question it runs in a northeasterly direction, plaintiffs' lands being on the right or southeast side thereof and defendants' on the left or northwest side. For convenience we may call the right side east and the left side west.

Plaintiffs claim record title as the devisees of their father, Peter Bratschi, to whom W. A. Kuhlman conveyed, February 24, 1913, by the following description: ". . . about 35 acres, being the southeast part of Section One, Township Forty-three, Range Thirteen, and more particularly described as beginning at the southeast corner of said Section One, thence running in a northwesterly direction to a white oak tree on the bank of the Moreau Creek, thence down said creek to the east boundary line of said Section One, then south to the place of beginning." It was admitted that the same land had been conveyed to Kuhlman and to his grantors by the same description "from the time title emanated from the Government." Defendants' deeds and those in the chain of title to their lands (on the left side of the Moreau) called for the "Center line of the Moreau Creek" as

their southeastern boundary. The dispute as to plaintiffs' record title to the strip in controversy hinges, largely at least, upon the effect of the call in their conveyances to the white oak tree on the bank of the Moreau, defendants contending that by that call plaintiffs' northwestern boundary is fixed at a line running from the tree along and upon the *right bank* of the creek while plaintiffs claim their deeds make the *stream itself* the boundary notwithstanding such reference to the tree on the bank. Further facts will be given in connection with legal questions to which they apply.

■ I. Appellants make the point that the judgment should be reversed because the record does not affirmatively show that a jury was waived in one of the three ways pointed out by statute, Section 950, Revised Statutes 1929, viz., by failure to appear, by written consent in person or by attorney filed with the clerk or by oral consent in court entered on the minutes.

Respondents suggest that the action should be treated as one in equity, therefore triable to the court, because in their petition they made some allegations to the effect that defendants were threatening to commit certain trespasses upon and to interfere with plaintiffs' use of the disputed strip and asked that defendants be enjoined from so doing. Plaintiffs prayed injunctive relief only "during the pendency of the suit," in other words, a temporary restraining order only. That issue was not presented, litigated or considered at the trial. The only issues presented and determined were those of plaintiffs' legal title and adverse possession. Defendants below and in this court have treated the case as one at law, as did plaintiffs below. We shall so treat it.

■ Appellants' abstract of the record proper shows only that on October 10, 1928, at the October term of court, "the cause came on for trial before the Honorable HENRY J. WESTHUES, Judge of said court, during which day evidence was adduced and on the following day . . . further evidence was adduced and at the close of said day trial was adjourned to the 27th day of November, at the October term, 1928, of said court, on which day the trial of the case was concluded and taken under advisement by the court." The bill of exceptions shows that both parties appeared in person and by attorney and without objection and without request for a jury or suggestion that one should be called, proceeded to trial before the court and actively participated in such trial. By respondents' additional abstract it is shown that at the same term and before judgment defendants in writing requested the court to make a finding of facts and state its conclusions of law in the case, which written request was filed with the clerk and noted upon the minutes. Defendants filed no motion in arrest of judgment. In their motion for new trial they made no complaint or mention of having been denied a jury trial.

On the contrary, they complained that the court had erred in failing to make and state a finding of facts and conclusions of law as they had requested at the trial (a point not urged on this appeal).

It is contended by appellants that trial of a law case without a jury where the record does not show statutory waiver is error appearing in the record proper, of which advantage may be taken on appeal though no exception had been saved at the time. They cite cases so holding. But in those cases, except Frowein v. Poage, 231 Mo. 82, 132 S. W. 241, infra, the point was saved by motion in arrest. In an early case, Vaughn v. Scade, 30 Mo. 600 (not cited by appellants), it was held that the point would not be considered on appeal unless so preserved. In the Frowein case the record showed that the appellant had requested a jury, which request the trial court had denied. He filed a motion in arrest which complained that "upon the record the judgment was erroneous" but did not specifically set forth the denial of a jury trial. This court said that the motion in arrest was not sufficiently specific to have reached "a matter of exception merely" but concluded that under the statute, now Section 1063, Revised Statutes 1929, requiring the appellate court to examine the record and award a new trial, reverse or affirm the judgment or give such judgment as the trial court should have given, etc, "the motion (in arrest) was not absolutely essential." It is apparent that the facts shown by the record in the Frowein case distinguish it from the case at bar.

The showing made by the record in the instant case, as above outlined, is certainly equivalent to a record entry that the parties "appeared and submitted the case for trial to the court," which entry, it was held in Bruner v. Marcum, 50 Mo. 405, could receive no other construction than that a jury trial had been waived. [See, also, Hagemann v. Pinska (Mo. App.), 37 S. W. (2d) 463, 467.] Moreover, we have frequently held that in civil cases, where the right to a trial by jury is not demanded, it is thereby waived. [See Hecker v. Bleish (Mo.), 327 Mo. 377, 37 S. W. (2d) 444,447, and cases cited; Kansas City v. Woerishoeffer (en banc), 249 Mo. 1, 24, 155 S. W. 779; State ex inf. Major v. Arkansas Lumber Co., 260 Mo. 212, 275-7, 169 S. W. 145.] We rule this point against appellants.

II. On the issue of adverse possession it is not necessary to review the evidence at length. Defendants made no substantial showing of title so acquired. The strip of land in controversy is low, rising but a few feet above the stream at ordinary stages of water. It, as well as the adjacent bottom land on the east side of the creek, overflows frequently. It could not be practically farmed, even if fertile which it is not, and has no valuable timber or pasturage on it. It has never been enclosed with fences. It does not appear to have substantial value unless to defendants as a driveway or to plaintiffs to afford

access for stock to the waters of the creek. Defendants offered some evidence tending to show that they and their grantors occasionally used the gravel bar northward from a ford at the upper end as a driveway by which to reach a small tract of two or three acres which they owned southeast of the creek and east of Section One, without asking permission of and without protest from plaintiffs. Such use, even if adverse and sufficiently continuous, could at most have given them a right only to an easement. There was some testimony that occasionally defendants would take a load or two of sand or gravel from the bar without asking permission. Other persons did likewise. Plaintiffs made no objection. Such ''use'' by defendants and their grantors was negligible and under the circumstances of no significance as a claim of ownership. Plaintiffs' evidence tended to show that they and their father had always claimed that the stream was their boundary under the Kuhlman deed and that from about the time that deed was made they had kept the bar and the rest of the disputed strip cleared, cutting off every year or so the willows and brush growing upon it, and had built a fence across it to let their cattle to the water from their adjacent field. It is true that about the time, or shortly before, this suit was filed, the dispute as to ownership between them and defendants having recently developed, the plaintiffs obtained a second deed from Kuhlman accurately describing a line coincident with the then thread of the stream as their boundary. That was merely an effort further to fortify their position. So far as the evidence tended to show actual possession in anyone or could so show, considering the nature of the disputed strip, it preponderated in favor of the plaintiffs. The court found the facts on that issue for the plaintiffs as shown by its judgment for them. We cannot say the finding is without substantial support in the evidence and it is therefore taken as conclusive of that question; the action being one at law.

■ III. (a) We think the description in the deed from Kuhlman to Peter Bratschi, admittedly the same as in all prior conveyances in plaintiffs' chain of title from the government, made Moreau Creek the boundary of plaintiffs' land in said Section One and was intended to and did convey the legal title extending to the thread of the stream, not merely to the east or southeast bank thereof. We can conceive of no purpose any grantor, from the government down, could have had in reserving the narrow, irregular and valueless strip between the bank and the thread of the stream.

In running the line first from the southeast corner of the section northwesterly to Moreau Creek it was necessary to designate a point at the creek where a mark could be fixed. Naturally such mark would be established or designated on the bank rather than in the stream itself; and it is to be noted that from the white oak tree the line called for does not run down the *bank* of the creek but ''thence down said creek.'' In construing a deed which called similarly for a beginning

point on the bank of a stream the Supreme Court of Kentucky held that it made the stream, not the bank thereof, the boundary. [Spurrier v. Hodges, 28 Ky. L. Rep. 804, 805.] The court said:

"While Carroll's southern boundary called for the bank of Nolin, as a matter of law his title extended to the center of the stream."

And further:

"The rule of law is well settled, that where a stream of water constitutes the dividing line between two tracts of land, the possessors each own to its center or thread."

In Cramer v. Perine, 188 N. Y. Supp. 148, the plaintiff's boundary was "to the waters of the creek, and thence down the creek, along the bank thereof," etc. The court said, l. c. 149: "Under all the authorities to which our attention has been drawn, this description carried the plaintiff's title to the center of the creek, in the absence of words of restriction or limitation." For further illustrative examples of calls beginning at a designated point on the bank of a stream and running thence down or along the stream which, it was held, carried the title to the center of the stream, see Gould on Waters (3 Ed.), page 381, Section 197.

In 9 Corpus Juris, page 187, section 65, it is said:

"A grant or conveyance of land bounded by a non-navigable stream carries with it the bed of the stream to its center unless a contrary intent is manifest from the grant or conveyance itself. In such case the stream is regarded as the boundary or monument, and the purchaser takes to the middle of the monument as a part and parcel of the grant. The reason for this is obvious. Ordinarily, in a conveyance of this nature, there is no purpose to be served in the retention by the grantor of a narrow strip of land in the bed of the stream, and the intent to grant it will, therefore, be presumed by a conveyance of the adjacent lands bounded 'by,' 'upon,' or 'along' the stream, or other equivalent phrase."

(b) It is well settled that where a non-navigable stream of water constitutes the dividing line between two tracts of land, absent reservations or restrictions in the deeds showing a contrary intent, as we hold was the case here, the possessor on each side owns to the center or thread of the stream. [Benson v. Morrow, 61 Mo. 345, 350; Whiteside v. Oasis Club (Mo.), 187 S. W. 27, 30; Spurrier v. Hodges, supra; Gould on Waters (3 Ed.) secs. 194-7, p. 372 et seq.] Appellants do not seem seriously to controvert this proposition. They contend, however, as we understand them, that if the thread of the stream is the boundary line, it is the thread of the stream as it existed many years ago which, they claim, was east of the gravel bar, and that the stream has shifted to the west but that the old line is still the boundary. In fact one of them testified that they claimed the bar because they considered it on their side of such line.

There was no substantial evidence that the waters of the creek at ordinary stages had ever flowed east of the gravel bar. One or two witnesses thought, from viewing the "old bank," the timber and other physical indications, that the current may at one time have been along the line contended for by defendants (which they had had surveyed). But all the witnesses on both sides, several of whom had known the creek forty-five or fifty years ago, testified that at its ordinary stages of water the flow had always been to the west of the gravel bar which on its eastern side was connected with the land. Most of the witnesses who had known the creek that long could perceive no substantial change in its present location, contour or the flowage of water with reference to the gravel bar as compared with the conditions existing when they first knew it. A few witnesses for defendants thought the stream had noticeably cut into the western bank, which was high, and had perceptibly shifted to the west. There was also evidence that considerable "chunks" of earth from the west bank had fallen or "slid" into the stream. But giving such evidence the construction most favorable to defendants it cannot be construed as showing that there had been an avulsion or sudden change of the course of the stream at the place in question. The change or shifting of the stream, if any, was by slow, practically imperceptible degrees over a long period of time, a gradual process of attrition on one side and accretion or deposit on the other by which the west bank may have been, to some extent, caused to recede and the gravel bar somewhat built up and extended.

Where the change in the course of a stream which forms the boundary between properties of adjacent owners is thus slow and gradual the boundary line changes with the stream, the center or thread of which continues to be the boundary line. This rule of law also is well settled. [See Primm v. Walker, 38 Mo. 94, 98, 99; Gould on Waters (3 Ed.) sec. 159, p. 316, sec. 198, p. 383; Angell on Water Courses (3 Ed.) p. 222; 9 C. J. p. 195, sec. 82; Niehaus v. Shepherd, 26 Ohio St. 40, 45; Spurrier v. Hodges, supra; Philadelphia Co. v. Stimson, 223 U. S. 605, 624, 32 S. Ct. 340, 56 L. Ed. 570.] The principle is recognized in State ex inf. Mansur v. Huffman (en banc), 318 Mo. 991, 2 S. W. (2d) 582, wherein authorities so holding are quoted with approval. This contention of defendants cannot be allowed.

IV. The foregoing also disposes of appellants' contention that plaintiffs must rely for recovery upon the strength of their own title rather than upon the weakness of their adversaries' title. Plaintiffs have shown title in themselves. Nor have we overlooked the further contention that in construing deeds all provisions thereof must be considered and that words stating the quantity of land conveyed may be considered in determining the grantor's intent, where the identity

or boundaries of the tract conveyed are not otherwise made clear. Though in some conveyances in plaintiffs' chain of title the land conveyed is described as "35 acres" instead of "about 35 acres," as in the Kuhlman deed, we think the intention to make the stream the boundary, as above discussed, sufficiently appears.

We find no substantial error in the record. The judgment of the circuit court is affirmed. *Westhues, C.,* not sitting; *Fitzsimmons, C.,* concurs.

.PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All of the judges concur.