ROSE C. BROWN, Appellant, v. FRANK WILSON.—155 S. W. (2d) 176.

Court en Banc, October 25, 1941.

*R. E. Kleinschmidt* for appellant.

660

*Edgar & Matthes* for respondent.

 TIPTON, J.—This case was originally appealed to this court, but we allowed a stipulation of the parties and transferred it to the St. Louis Court of Appeals. That court affirmed the judgment of

the trial court. [Brown v. Wilson, 131 S. W. (2d) 848.] Thereafter this court, in a certiorari proceeding brought by the plaintiff, as relators, held that the case was within the exclusive appellate jurisdiction of this court because title to real estate was involved within the meaning of the Constitution, and retained the case for argument and decision on the merits, which is the matter now under submission. [State ex rel. Brown v. Hughes et al., 345 Mo. 958, 137 S. W. (2d) 544.]

The opinion of the St. Louis Court of Appeals was written by Commissioner BENNICK which clearly and properly decides the points raised on the merits of the case. We adopt the same except as to the last point, namely, the judgment rendered by the trial court was *coram non judice* and void insofar as it purported to adjudge the defendant the "owner" of the land. Without resort to quotation marks, the adopted part of the opinion is as follows:

This is an action in ejectment which was duly instituted in the Circuit Court of Jefferson County on July 30, 1937. The trial of the case was to the court alone without the aid of a jury. From a judgment which was rendered in favor of defendant, plaintiff was allowed an appeal to the Supreme Court, but upon that court's becoming satisfied that it was without jurisdiction over the cause, it ordered that the same be transferred here.

Plaintiff's petition was in the conventional form, alleging that she was the owner in fee simple of the land in question and entitled to its possession, and that defendant had wrongfully entered into possession of the land and was unlawfully withholding the possession thereof from plaintiff.

Defendant's answer was a denial that plaintiff was the owner in fee simple of the land in question or that defendant had wrongfully entered into possession of the premises and was unlawfully withholding possession thereof from plaintiff, followed by the further allegations, first, that on March 26, 1918, defendant had purchased the land from his predecessors in title, as shown by warranty deed, and had continuously held the record title thereto since the date of purchase; and second, that he had been in open, notorious, adverse, exclusive, continuous, and hostile possession of the land since March 26, 1918, claiming title thereto, cultivating the same, and exercising the usual acts of ownership over the land since that date.

In other words, while defendant may not have pleaded his defenses in the precise alternative fashion, the intent of his answer (to which no objection was interposed) was that he had purported to acquire title to the land in dispute by warranty deed from his predecessors in title, but that regardless of whether legal title to such disputed tract had been actually acquired by him by such conveyance, he had in any event held the land adversely to plaintiff's claim, and under color of right, for more than ten years prior to the institution of

this action, so that in view of such adverse possession for such period of time, he could no longer be said to be unlawfully withholding possession of the land from plaintiff.

The land in dispute, a small tract comprising only three-fourths of an acre in area, lies between the present main channel of Big River to the north and a slough to the south, which, until about thirty years ago, constituted the main channel of the river. The evidence was not all of one accord as to the manner in which the river had changed its course, that is, as to whether the change had been sudden or whether it had been slow and gradual, though there was evidence to show that the tract in question was once a distinct island, with water flowing through the channels both to the north and to the south. It was also shown that the channel of the slough is still well defined, being from forty to fifty feet in width and from eight to ten feet in depth, and that even now a rise or from two to three feet in Big River will cause water to run through the former channel in the slough.

Plaintiff's land (except as to the tract in dispute) lies south of the slough, while defendant's land lies north of the present channel of Big River, save for a small tract which is located south of the river and immediately east of plaintiff's land. Plaintiff acquired her land on March 23, 1935, by warranty deed from George M. Sullens and Sarah E. Sullens, his wife, while defendant acquired his land on March 26, 1918, by warranty deed from L. P. Williams and Maggie H. Williams, his wife. Suffice it merely to say that each deed purported to make Big River either the northern or the southern boundary of the land conveyed as the case might be, and this controversy between the parties has arisen over the question of whether for one reason or another the boundary so designated should be considered the original or the present channel of the river.

Preliminary to the matters of chief insistence in the case, plaintiff makes the point that the court erred in permitting defendant to testify regarding what his deceased grantor, L. P. Williams, had shown him relative to the location of the corners of his land. Regardless of whether such evidence might have been objectionable for other reasons, it was not objectionable upon the ground assigned for its exclusion, which was that Williams was dead at the time of the trial. This is not a case where the validity of defendant's deed was the point in issue, nor is it a case where the parties to the action claimed to have acquired their titles from a common source. So far as the particular evidence was concerned, defendant was in no sense occupying a position adverse to that which Williams had occupied, but instead, as the grantee in the deed from Williams and his wife, was in direct privity with him. Consequently defendant was not disqualified to testify by reason of the fact of Williams' death, and the objection assigned by plaintiff to the evidence in question is therefore unavailing.

664

For her next point plaintiff argues that the court erred in refusing her requested declarations of law Nos. 1, 4, and 5, not only because each of the same contained correct propositions of law (as she contends) upon the facts stated therein, but also for the further alleged reason that with such declarations of law refused, it is impossible to determine upon what theory of the law the court reached its decision in the case.

By her requested declaration of law No. 1, plaintiff would have had the court declare the law to be that if the land in dispute was included in the description in the deed from plaintiff's grantors to her, and if plaintiff had the record title to the land, then plaintiff was entitled to recover as the actual owner of the land, unless defendant had acquired title by limitation, that is, by adverse possession. This declaration of law was properly refused for the reason that it omitted all reference to the very issue upon which plaintiff predicated her right to recover, which was the question of whether the river had slowly and gradually changed its course to the north from its original channel so as to have permitted the land in dispute to be accreted to plaintiff's main tract. For the court merely to have declared that the disputed land was included in the description in the deed from plaintiff's grantors to her would not have determined the real issue in the case at all, since the fact was that both deeds purported to convey to the river, and the question of which party was entitled to possession of the disputed tract depended, among other things, upon the character of the change which the course of the river had taken. Plaintiff frankly admits in her brief that there was such a question in the case, and with this the situation, the court could obviously not have ignored the same by the giving of plaintiff's requested declaration of law No. 1.

Plaintiff's requested declarations of law Nos. 4 and 5 were in truth not declarations of law at all, but instead were patently designed to be findings of fact (though not requested as such) in favor of plaintiff upon the issues both of adverse possession by defendant and of title in plaintiff by accretion. That such purported declarations of law were actually not declarations of law would in any event have been sufficient reason why the court should have refused them, and certainly they could not have been given in the form requested when it would appear from the result in the case that the court did not find for plaintiff upon either of such issues. The views of the court are indicated, not alone by its refusal of the so-called declarations of law Nos. 4 and 5, but also by its giving of plaintiff's requested declarations of law Nos. 2 and 3 upon the issues of adverse possession and acquisition of title by accretion, so that with the whole record before us, we are not left without light respecting the theory or theories upon which the lower court arrived at the general judgment in the case.

This brings us then to the question of the actual merits of the case, or, in other words, to the question of whether there was substantial evidence to warrant the court's judgment in favor of defendant, whether predicated upon the theory that the disputed tract had not accreted to plaintiff's main tract, or else upon the theory that defendant had in any event acquired title to the land by adverse possession. It of course goes without saying that if there was substantial evidence adduced to warrant the findings of the court as embodied in or necessarily forming the basis for its judgment, then findings are conclusive upon this court, and the judgment based thereon is not to be disturbed for want of evidence to support it.

Now the law is, as counsel themselves concede, that where a nonnavigable stream of water constitutes the dividing line between two tracts of land, the possessor on either side, absent contrary restrictions or reservations in his deed, holds to the center or thread of the stream; that where a subsequent change in the course of the stream is by the slow and gradual process of accretion, the boundary line changes with the stream, entitling the one owner to whatever is added to his land by reason of accretion; but that where the stream changes its course suddenly or in such a manner as not to destroy the identity of the land between the two channels or to render it incapable of identification, the process is not one of accretion, and the boundary line remains as it was before the change in the channel of the stream. [McCormack v. Miller, 239 Mo. 463, 144 S. W. 101; Bratschi v. Loesch, 330 Mo. 697, 51 S. W. (2d) 69; State ex inf. Mansur v. Huffman, 318 Mo. 991, 2 S. W. (2d) 582.]

Here the undisputed testimony was, as we have already pointed out, that the slough referred to in the evidence was originally the main channel of the river, and indeed there seems to be no dispute but that the slough still constitutes a very distinct channel through which a part of the river runs in time of high water. As regards the question of the manner or character of the change in the ordinary course of the river, there was evidence that at one time, presumably before the change of channel had been fully accomplished, the disputed tract was an island, entirely surrounded by water. Such evidence, along with other evidence for defendant, served to refute the idea that the disputed tract had accreted to plaintiff's main tract, and with this evidence believed by the court, there was ample basis for the court to rule, as it may well have done, that the boundary line between the two farms had remained as it was before the change in the channel had taken place.

But even though the court had found that the change in the course of the river had occurred by the slow and gradual process of accretion to the main body of land subsequently purchased by plaintiff, it would nonetheless have been warranted in finding that defendant had acquired title to the disputed tract by his open, no-

torious, and adverse possession of it from and after 1918 when the conveyance was made to him by Williams and his wife. There was ample evidence to show, though disputed in certain particulars, that throughout all this period of time he had either farmed or pastured the disputed tract, and that he had also stretched a fence across the western end of it.

Plaintiff insists, however, that defendant's possession of the land, under his own admissions, could not have been adverse, in that regardless of any acts on defendant's part indicative of ownership, he had intended to claim only what was conveyed to him by his deed.

The rule is that while one's occupancy of an adjoining proprietor's land under a mistake as to the boundary line, and without any intention of claiming beyond the true boundary line, when ascertained, is not adverse possession, yet if he takes and holds possession up to a given point, and claims to be the owner to such point, his possession is adverse, notwithstanding his belief that such point is the true boundary line, when in fact it is not. [Pioneer Cooperage Co. v. Dillard, 332 Mo. 798, 59 S. W. (2d) 642; Courtner v. Putnam, 325 Mo. 924, 30 S. W. (2d) 126; Welsh v. Brown, 339 Mo. 235, 96 S. W. (2d) 345; Foard v. McAnnelly, 215 Mo. 371, 114 S. W. 990; Rhodes v. Wilson (Mo.), 239 S. W. 113; Milligan v. Fritts, 226 Mo. 189, 125 S. W. 1101.]*

Conceding that defendant did not purposely intend to lay claim to any land that he knew was not his own, the fact nevertheless remains, or at least the court was amply entitled to find, that he did at all times intend to claim up to the slough, believing that the slough was in truth the southern boundary of his land. If he did not acquire title by his deed, his subsequent possession of the disputed tract was therefore adverse to defendant and her predecessors in title, and with his possession having been continued openly from and after the time of the execution of the deed to him, it would in any event have ripened into an estate by limitation long prior to the institution of the case at bar.

Finally plaintiff makes the point that aside from all other questions in the case, the judgment rendered by the court was *coram non judice* and void insofar as it purported to adjudge and determine that defendant was the "owner" of and entitled to the possession of the premises, and that plaintiff had no "interest" therein.

Plaintiff's petition did not ask that title to the land be determined, nor did the defendant's answer ask the court to determine title. But in the judgment of the circuit court we find the following language: "Wherefore, it is considered, ordered and adjudged by the court that defendant is the owner of and entitled to possession of the above described real estate, and that plaintiff has no interest in said

---

*See also, State ex rel. Edie v. Shain et al., 348 Mo. 119, 152 S. W. (2d) 174; and Tillman v. Hutcherson, 348 Mo. 473, 154 S. W. (2d) 104.

real estate, and that all costs herein be taxed against plaintiff.'' We held in the certiorari proceeding, State ex rel. Brown v. Hughes et al., supra, that the judgment was broader than the pleadings and it did vest title in the defendant. ''It is the established rule in this State that judgments must be responsive to the issues raised by the pleadings, and that the relief to be awarded by the judgment is limited to that sought by the pleadings; furthermore, a judgment which is based upon issues not made by the pleadings is *coram non judice* and void, at least insofar as the judgment goes beyond the issues presented and raised by the pleadings.'' [Hecker v. Bleish, 319 Mo. 149, 3 S. W. (2d) 1008, l. c. 1019.] Therefore, that part of the judgment above quoted that vests the title in the defendant is void.

It is therefore ordered that the judgment of the circuit court be reversed, and the cause be remanded, with directions to enter a judgment for defendant in conformity with this opinion. All concur.

