**Stephen P. MURPHY and Mary E. Murphy, Appellants,**

v.

**TIMBER TRACE ASSOCIATION, Respondent.**

**No. WD 41248.**

Missouri Court of Appeals, Western District.

Sept. 12, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 31, 1989.

Application to Transfer Denied Dec. 12, 1989.

---

J. Courtney Bowlin, Overland Park, Kan., for appellants.

John M. Lilla, Kansas City, Mo., for respondent.

Before SHANGLER, P.J., and TURNAGE and KENNEDY, JJ.

SHANGLER, Presiding Judge.

The plaintiffs Murphy are owners of a residence in the Timber Trace subdivision of Kansas City. The property is subject to a Declaration of Covenants, Conditions and Restrictions that limit the display of yard signs offering the residence for sale or lease Saturday and Sunday afternoons between the hours of 1:00 p.m. to 5:00 p.m. The plaintiffs engaged a realtor who placed signs in the front yard to assist in the sale of their property, but at times and for durations prohibited by the restrictions.

The signs were removed by the Timber Trace Association.

The plaintiffs brought a petition to enjoin the Timber Trace Association from the removal of the real estate sale signs and for a declaratory judgment of the rights and duties of the parties under Article IX, Section 4 of the Declaration.[1] The trial court denied injunction and refused the declaration of the invalidity of the restrictions as sought by the petition, and entered judgment for Timber Trace Association. The plaintiffs appeal from that judgment.

The petition alleged as the actual controversy under the Declaration of Covenants, Conditions and Restrictions that the plaintiffs claim the right to display a *for sale* sign on their property 24 hours a day until the residence is sold, whereas the defendant seeks to enforce the Article IX, Section 4 restriction of the Declaration that a single sign may be displayed for that purpose, but *"only on Saturday and Sunday afternoons, during the hours* of 1:00 p.m. and 5:00 p.m."  The petition alleged also that the Timber Trace Association had not consistently enforced the *for sale* sign restrictive covenant and so waived its effect as to the plaintiffs.

The petition sought the judicial declarations that the prohibition of Section 4 is void as contrary to the public policy expressed in § 67.317, RSMo 1986, and that the Association had in any event waived its right to enforce the prohibition against the plaintiffs.  The petition also sought the order of the court to enjoin the Association from entry onto the property of the plaintiffs without their permission to remove the *for sale* signs placed there.[2]  The case for the petition was made out by the testimony of plaintiff Stephen P. Murphy, himself an attorney, and by a number of exhibits.  That for the defendant was made out by Asel and Green, directors of the Timber Trace Association.  The evidence was responsive and confined to those grounds pleaded for redress.  That is to say, there was no enlargement of issues by consent.

On this appeal, the plaintiffs raise five points of error: (1) the enforcement of the sign restrictions covenant was a violation of public policy; (2) the enforcement of the sign restrictions covenant was state action which infringed the plaintiffs' constitutional right of free speech under the first and fourteenth Amendments; (3) the enforcement of the sign restrictions covenant was erroneous because the plaintiffs had the right to place the signs upon the city owned fee where they were placed; (4) the finding that the Association did not trespass was erroneous in that the Association had no right or easement to come upon the

---

1. "Section 4. Signs. The construction or maintenance of yard signs, building or window signs, billboards or advertising structures on any kind of the Properties is prohibited except the following:

    (a) A single sign offering the residence for sale or lease may be displayed, but only on Saturday and Sunday afternoons, during the hours of 1:00 p.m. to 5:00 p.m.

    (b) At all times when such signs are displayed, the selling agent must be on the premises being advertised.

    (c) Such signs may not exceed five (5) square feet in area.

    (d) Signs posted by a licensed builder, advertising only that builder's new home, shall be excepted from (a) and (b) above.

    (e) Signs displayed in violation of these regulations shall be subject to pick up at the direction of the Association, which shall have no responsibility for their safekeeping.

    (f) Garage sale signs are permitted during the time the sale is being held, provided such signs are removed during any periods sale is not open to public.

    (g) Entrance markers, street and neighborhood signs, and subdivision promotional signs may be erected and maintained by the Declarant or the Association.

2. The Legal File on appeal rescripts only one Petition, a pleading for declaratory judgment and other relief.  We gather from the statement of fact narratives of both parties that the action under review commenced as a petition for injunction by the plaintiffs to prohibit the Association from removal of the real estate *for sale* signs placed on their property by the plaintiffs.  The narratives agree that the issues of the injunction action were enlarged to include a request for a declaratory judgment of the rights and duties of the litigants under Article IX, Section 4 of the Declarations.  The narratives agree, nevertheless, that the legal grounds asserted for both injunctive relief and declaration of rights are the same: (1) the invalidity of Section 4 as in contravention of the public policy expressed in § 67.317, and (2) the waiver by the Association of the right to enforce the restriction of Section 4.

property of the plaintiffs without permission to remove the signs; (5) the finding that the Association had not waived any noncompliance by selective enforcement of the restrictions was erroneous.

We refuse review to points (2) and (3) tendered by the plaintiffs on this appeal because neither was raised or preserved as settled procedure requires.

■ Point (2) attempts the presentation of constitutional error. It is the sense of that contention that, the sign restrictions although otherwise valid limitations when carried out by voluntary action, become infringements of the constitutional right of free speech when enforced by state action—judicial decree. The limitations the covenants impose on the real estate signs, the plaintiffs assert, constitute "nearly complete prohibition of commercial speech", and as such are not entitled to enforcement by the courts. The argument cites *Shelley v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948) and other cases of that genre.[3] To engage adjudication and then review of a constitutional question, however, the issue must be presented at the earliest moment that good pleading and orderly procedure admit under the circumstances of the case; otherwise, it is waived. *Century 21 v. City of Jennings*, 700 S.W.2d 809, 810[1, 2] (Mo. banc 1985); *In re $29,000 In U.S. Currency*, 682 S.W.2d 68, 72[1, 2] (Mo.App.1984).

■ The constitutional question the plaintiffs pose was neither the subject of the original pleadings for declaratory judgment as to the validity of sign restrictions nor of the injunction against their enforcement, nor of any subsequent motion to the court before the trial of the issues. It was asserted for the first time in the brief on appeal—and hence does not comport with the practices of good pleading and orderly procedure owed the adjudication of such solemn questions. The plaintiffs say that

the testimony of Stephen Murphy satisfies these conditions of constitutional adjudication and presents the first amendment issue. It was recorded during cross-examination of that witness as to whether the builder's signs harmed him.[4]

I don't think any sign is harming me. I'm not against any sign. I'm in favor of anybody putting up any signs. If you've got a house for sale, put it up. If you want to sell a lot, put it up. I'm for free speech, First Amendment. I'm a big First Amendment man.

■ The plaintiffs do not explain how this casual, even flippant, response on an issue the petition never posed accords under the circumstances as that "orderly procedure" good practice imposes to present the constitutional question at the "earliest possible moment." *Century 21 v. City of Jennings*, 700 S.W.2d at 810[1, 2]. It is too late even in a reply for a plaintiff to question the constitutional authority under which the defendant acted. *Rider v. Julian*, 365 Mo. 313, 282 S.W.2d 484, 497[21–23] (banc 1955). Nor will an agreed stipulation in lieu of a timely pleading do to raise a constitutional question. *State ex rel. Eagleton v. Patrick*, 370 S.W.2d 254, 260[9, 10] (Mo.1963). Thus, even the principle that issues not raised by the pleadings but tried by the consent of the parties [if, indeed, Rule 55.33(b) is what the plaintiffs mean to invoke] does not avail to save as a constitutional issue a question not pleaded or otherwise presented at the earliest possible moment.

■ The want of constitutional question pleaded and proved notwithstanding, the Order and Judgment entered by the trial court on the petition for declaratory judgment and injunction declares:

Enforcement of Article IX, Section 4 of the DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS of the TIMBER TRACE ASSOCIATION,

---

3. It is to be said that state action as defined in *Shelley* assumed, the constitutional infringement found there was as to the rights of noncovenanters and not as to persons who voluntarily assumed the obligations of the restrictions. *See* U. Reichman, 43 U.Chi.L.Rev. 253, 276 (1976).

4. One of the grounds pleaded by the plaintiffs for injunctive relief was that the signs of the original builders were regularly displayed and so constituted waiver of enforcement of the sign restrictions as to them.

set forth above, does not impinge upon any right of free speech protected by the Constitution of the United States or the Constitution of the State of Missouri. That aspect of the judgment presumes to adjudicate not only an issue never pleaded and raised for the first time on appeal, but also an issue never raised on appeal. That the enforcement of the sign restrictions infracts the right of free speech protected by the constitution of our state is a ground for relief never asserted by the plaintiffs, even for the first time on this appeal. The powers of a court of equity to adjudicate are broad, but are limited to the claim for relief and issues made by the pleadings. *Mills v. Keasler*, 395 S.W.2d 111, 118[9–12] (Mo.1965). To the extent that the judgment under review purports to adjudge beyond the issues presented and raised by the pleadings, it is *coram non judice* and void. *Brown v. Wilson*, 348 Mo. 658, 155 S.W.2d 176, 180[13–16] (banc 1941).

We refuse review also to point (3): the contention on appeal that the enforcement of the sign restrictions was error because the signs were placed upon the city owned fee [street and utility easements] which crosses the plaintiffs' property, and hence not subject to the effect of the restrictions. It was an issue never pleaded, or so deemed as pleaded. Rule 55.33(b).

### Enforcement of the For Sale Sign Restrictions As a Violation of Public Policy

The plaintiffs pleaded, litigated and preserved for review the contention that the enforcement of the *for sale* sign restrictive covenants violates the public policy expressed by § 67.317, RSMo 1986. That statute provides:

No political subdivision of this state shall enact or enforce any ordinance which forbids or restricts the right of any owner of an interest in real property or his agent from displaying on the property a sign of reasonable dimensions, as may be determined by local ordinance, advertising:

(1) The property interest is for sale, lease or exchange by the owner or his agent;

(2) The owner's or agent's names; and

(3) The owner's or agent's address and telephone number.

The plaintiffs find in the text of the statute the public policy that not only a political subdivision of the state may not enact or enforce an ordinance that forbids or restricts the right of an owner of real estate from the display of a *for sale* sign on the property, but also the public policy against the enforcement of promises between persons to restrict such a display. In the context of this litigation, the argument assumes that a voluntary association of homeowners may not do by agreement what government is prohibited from doing by statute. That is to say, that the public policy of § 67.317 informs both private and governmental activity equally.

Public policy may be understood as the working out of the values, norms and ideals of a society through the legal forms and the decision making process at all levels of government. Sutherland, Statutory Construction § 56.01 (4th Ed.1984); *State ex rel. v. Bowman*, 184 Mo.App. 549, 170 S.W. 700, 701[2] (1914). It finds its sources in the federal and state constitutions, statutes, judicial decisions, and even in the constant practice of governmental officials. *In re Rahn's Estate*, 316 Mo. 492, 291 S.W. 120, 123 (1927); *Boyle v. Vista Eyewear, Inc.*, 700 S.W.2d 859, 871[5, 6] (Mo.App. 1985). The common law, built upon the mores and habits of society, also serves as a vital source for the determination of public policy. *Lambing v. Southland Corp.*, 739 S.W.2d 717, 719 (Mo. banc 1987); Sutherland § 56.03. The organic law and statutes as intersticed by judicial interpretation "are the very highest evidence of public policy." *Brawner v. Brawner*, 327 S.W.2d 808, 812[6] (Mo. banc 1959); 6A Corbin on Contracts § 1375, p. 15 (1962). Thus, legislation enacted in response to new social interests and demands serves as a significant evidentiary source of current public policy. Whether the new enactment represents an extension or departure from extant public policy may be determined by reference to prior and existent statutes. Sutherland, § 56.02.

It is the argument of the plaintiffs that § 67.317 expresses the public policy of the First Amendment, expounded by the United States Supreme Court in *Linmark Associates, Inc. v. Township of Willingboro*, 431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977), that protects the free flow of truthful commercial information, and that the covenants of the Association to restrict the display of *for sale signs* impairs that policy. It is acknowledged that the Constitution of the United States and the gloss given that text by the United States Supreme Court constitutes the law of the land and, as such, is a paramount source of public policy. The discerned constitutional policy, in turn, aids to determine the legitimate bounds of statutory enactments. Sutherland § 56.04; *In re Rahn's Estate*, 291 S.W. at 123. There was no constitutional question before the trial court for decision, however, and hence none before us for opinion on appeal. Accordingly, we do not respond whether § 67.317 expresses the public policy *Linmark* expounds.[5]

█ Plaintiff argues to us that the covenants with the Association violate not only the public policy expressed by § 67.317, but as enforced, the sign restrictions violate the public policy of § 416.031 as well. That section renders unlawful "[e]very contract, combination or conspiracy in restraint of trade or commerce." The brief on appeal asserts that the effect of the restrictions on the display of signs is to put homeowners at a competitive disadvantage to builders in the sale of homes in Timber Trace since the signs of the builders are allowed display for many more hours than are signs of the homeowners. That contention however, was not pleaded or tried by consent as though pleaded, and so was not presented to the trial court for judgment. It is raised for the first time by the brief on appeal, and so is not properly for review.

█ What remains to the public policy argument—that the prohibition of § 67.317 against enactment or enforcement of an ordinance that forbids or restricts the right of an owner to display a *for sale* sign on the real estate also forbids that activity by the voluntary agreement of persons—is the literal text of the statute. That language, however, is as consistent with the historical and entrenched public policy in favor of the free and untrammeled use by an owner of private property as with any other properly before us—and less attenuated. *Marose v. Deves*, 697 S.W.2d 279, 289 (Mo.App.1985). The scheme of the restrictive covenants operative between the homeowners and Association here, rather, is more readily referable to the public policy the Uniform Condominium Act enacts in favor of the social benefits of planned community developments. Chapter 448, RSMo 1986, § 448.2–115, *Use for sale purposes*.

The point is denied.

### The Finding That the Association Did Not Trespass

█ This point argues, not that the display of the *for sale* signs by the plaintiffs was not a violation of the covenants of the Declarations, but rather that the Association was without right to come upon their property to remove them. The argument posits the legal principle that an easement must define both a dominant estate and a servient estate, and they must not be lodged in the same person. *See, e.g. Ball v. Gross*, 565 S.W.2d 685, 688[4–6] (Mo. App.1978). The argument then proceeds to the conclusion that, since the covenants purport to create a blanket easement over all the property in the subdivision to the declarant developer or his nominee, and since the choice of the nominee Association was controlled by the developer, the purported easement merged with the fee of

5. We are bound to observe that the ordinance *Linmark* invalidates as an unconstitutional restriction on the right of free speech prohibited the display of real estate *for sale* signs altogether, unlike the covenants the plaintiffs impugn, which undertake to regulate only the time and days of the display. *Linmark* marks the difference [at 93]: "This distinction is not without significance to First Amendment analysis, since laws regulating the time, place, or manner of speech stand on a different footing from laws prohibiting speech altogether."

If we assume nevertheless that § 67.317 expresses the public policy *Linmark* expounds, there is no intimation that the policy means to relate beyond governmental enactments to personal promises voluntarily transacted.

the developer. Therefore, there was no valid easement, and the Association was without right to come upon the property of the plaintiffs to remove the signs. This construct is posed without reference to any of the Declarations relevant to the developed argument.

Article X of those Declarations relates to Easements. They are granted not only to the Association, but also to the municipality and the public utilities, for the benefit of the homeowners. The easements run upon the common properties and are the means whereby the utility and other installations, mail and other governmental services are maintained to the homeowners. The arguments of the plaintiffs do not explain how the scheme of easements within the comprehensive communal facility development plan the Declarations describe fail or legal effect.

This exposition makes no allusion to the covenant of Article IX, Section 4(e):

> Signs displayed in violation of these regulations shall be subject to pick up at the direction of the Association, which shall have no responsibility for their safekeeping.

Section 6 of Article IX then specifically grants the Association the right to enter upon the offending dwelling unit "to take such steps as may be necessary to remove or otherwise terminate to abate such violation." There was no need of the sanction of easement for the Association to act; the voluntary agreement by the covenant of the plaintiffs sufficed. There is no contention that the conduct of the Association in the removal of the signs went beyond the right of entry granted by the homeowners or was otherwise unreasonable.

The point is denied.

### The Finding That The Association Had Not Waived Noncompliance by Selective Enforcement of the Restrictions

The plaintiffs pleaded as a ground for both declaratory and injunctive relief that the Association waived the enforceability of the covenants restricting the display of the *for sale* signs by the failure to enforce the covenants consistently. The evidence of the plaintiffs bore on that issue

as posed by the pleadings almost exclusively. It was the substance of that testimony that the *for sale* signs of the builders were allowed unrestricted display, whereas those of the plaintiffs were confined to the days and hours imposed by the covenants. The court found from the evidence that the plaintiffs had not sustained the burden to prove "that degree of lack of enforcement, or of selective enforcement, necessary to support a finding that defendant has waived the provisions" of the covenants of restriction. That finding rests on substantial evidence.

On this appeal, the plaintiffs argue not the theme of uneven enforcement, but rather that the restrictions, properly construed, do not allow builders "to have signs at all times." That was not a declaration the petition requested. Moreover, the meagerness of the brief disserves an informed response. It is enough to say that the restrictions are susceptible to the meaning the finding and judgment of the trial court implicitly accord. That is to say, they are amenable to the construction that a builder advertising a new home was allowed "to have signs at all times."

We observe again the finding of the trial court that the plaintiffs failed to prove a selective enforcement, and hence a waiver, of the *for sale* sign restrictions. The plaintiff Murphy gave testimony on that issue, but his recollections were not always definite. He acknowledged that he never complained of any sign, nor did he know of any complaint that was not heeded by the Association. The trial court could have reasonably found from the evidence that there was not that "... conscious acquiescence in persistent and obvious widespread violations ..." of the restrictive covenants to amount to a waiver or abandonment in law of the plan intended to be maintained by them. *Dierberg v. Wills*, 700 S.W.2d 461, 466 (Mo.App.1985).

The judgment is affirmed.

All concur.