

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| VIRGINIA PAYNE, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | WD77553 |
| v. | ) | |
| | ) | OPINION FILED: |
| | ) | May 5, 2015 |
| ASHLEY L. MARKESON, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Jack R. Grate, Jr., Judge**

**Before Division One:** James Edward Welsh, Presiding Judge, and
Thomas H. Newton and Karen King Mitchell, Judges

Ashley Markeson appeals the trial court's denial of her motion to reduce the verdict, which was obtained against her by Virginia Payne in an action for damages arising out of personal injuries Payne suffered in an automobile accident resulting from Markeson driving while intoxicated. Markeson argues that she was entitled to a settlement credit against the verdict as a result of Payne entering a pre-trial settlement with Markeson's co-defendant, MM Investments, Inc., the dram shop that provided Markeson alcohol on the day of the injury-producing collision. The trial court denied the motion to reduce the verdict, finding that

Markeson was barred by both statute and public policy from obtaining a settlement credit. We reverse in part and affirm in part.

## Factual Background[1]

In September 2009, Markeson drove her vehicle across the centerline and collided with Payne's vehicle. Payne suffered numerous injuries, including fractures to her right ankle, left femur, and right wrist. Markeson, who was on probation for a prior DUI conviction, had been drinking at a bar just before the accident. At the time of the accident, her blood alcohol level was .166 (more than twice the legal limit). She ultimately pleaded guilty to second-degree assault due to intoxication.

Payne filed a lawsuit against Markeson, seeking both compensatory and punitive damages on the basis that Markeson was negligent in causing the accident and that Markeson's actions demonstrated conscious disregard for the safety of Payne and others.

Payne also sued MM Investments, Inc. (d/b/a Doc Holliday's), pursuant to Missouri's "Dram Shop Act." § 537.053.[2] She alleged that MM Investments continued to serve Markeson alcohol that evening even though she was visibly intoxicated. Payne and MM Investments reached an agreement under which MM Investments agreed to pay Payne $475,000. The trial court subsequently dismissed MM Investments on Payne's motion.

Markeson then filed an amended answer to include an affirmative defense for a reduction in the amount of the settlement agreement, pursuant to section 537.060.[3] Following a bifurcated

---

[1] Many of the facts relayed are taken directly from our prior opinion in *Payne v. Markeson*, 414 S.W.3d 530 (Mo. App. W.D. 2013), without further attribution.

[2] All statutory citations are to the Missouri Revised Statutes 2000, as updated through the Cumulative Supplement, unless otherwise noted.

[3] Section 537.060 permits the amount of damages awarded based upon a defendant's liability to be reduced by the amount of a settlement reached between the plaintiff and a joint tortfeasor. *Sanders v. Ahmed*, 364 S.W.3d 195, 211 (Mo. banc 2012). It was enacted to ensure that an injured person does not obtain more than one satisfaction for the same wrong. *Id.* at 213 (citing *State ex rel. Normandy Orthopedics, Inc. v. Crandall*, 581 S.W.2d 829, 831 n.1 (Mo. banc 1979)).

jury trial, a verdict was entered in favor of Payne for $350,000 in compensatory damages and $700,000 in punitive damages.

After trial, Markeson filed a "Motion to Reduce the Verdict," in which she sought a reduction of $475,000 in order to reflect the prior settlement, as required by section 537.060. Without ruling on Markeson's motion, the trial court entered its "Judgment" in favor of Payne for $350,000 in compensatory damages and $700,000 in punitive damages. Markeson filed a "Motion for New Trial and Motion to Amend the Judgment," again seeking a reduction in the judgment in the amount of $475,000, pursuant to section 537.060. The trial court denied the motion for new trial, but set Markeson's Motion to Reduce the Verdict for a hearing.

At the hearing, there was a question raised as to whether the court retained jurisdiction to rule on the motion. Following briefing and a rescheduled hearing, the trial court told the parties that it had intended to provide Markeson the reduction but that, due to the passage of time, the court no longer had jurisdiction over the case and the motion to reduce the verdict could not be granted. Markeson appealed that ruling, and we reversed the trial court's decision, noting that the court had jurisdiction to decide Markeson's motion. *Payne v. Markeson*, 414 S.W.3d 530, 542-43 (Mo. App. W.D. 2013). Though the parties raised issues regarding the propriety of Markeson's requested relief, we declined to rule the merits and instead remanded for the trial court to do so. *Id*. at 542 n.14.

On remand, Markeson filed suggestions in support of reducing the verdict, wherein she claimed that she was entitled, under section 537.060, to a reduction of the jury's $350,000 compensatory damages verdict down to zero as a result of the $425,000 settlement reached between Payne and MM Investments. Markeson further concluded that, if the court reduced the compensatory damages to zero, it would also have to set aside the punitive damages because

3

"there can be no recovery for punitive damages when there is no award for actual damages." Payne filed opposing suggestions, claiming that section 537.060 did not apply for two reasons: (1) MM Investments was liable only under section 537.053 and not "liable in tort," as is contemplated for a reduction under section 537.060; and (2) Missouri's public policy of placing responsibility for injuries resulting from drunk driving accidents on the driver precluded application of section 537.060 in favor of Markeson. Payne further argued that, even if the compensatory damages were reduced to zero, the award of punitive damages would stand because it is the existence of the compensatory damage award and not its amount that determines whether a plaintiff is eligible for punitive damages.

The trial court found that section 537.060 did not apply because a "settlement entered into with a party whose liability was based on the Dram Shop law (a statutory claim) is not a settlement with a person liable in tort," as required by the terms of section 537.060. The trial court further determined "that allowing an intoxicated driver to reduce a verdict would be contrary to public policy as expressed in § 537.053." Finally, relying on *Freeman v. Myers*, 774 S.W.2d 892, 894-95 (Mo. App. W.D. 1989), the court declared that, "even if the Court were to allow a reduction of the actual damages, the punitive damages award would be unaffected." Markeson appeals.

**Standard of Review**

So long as the disputes giving rise to the denial of a motion to reduce judgment under section 537.060 are purely legal questions, "[w]e review the denial of a motion to reduce [that] judgment . . . *de novo.*" *Heckadon v. CFS Enters., Inc.*, 400 S.W.3d 372, 378-79, 379 n.4 (Mo. App. W.D. 2013). Here, because the disputes involve solely legal questions, our review is *de novo*.

4

**Analysis**

Markeson raises two points on appeal. First, she argues that the trial court improperly denied her motion to reduce the compensatory damages to zero because reduction was required by section 537.060, and neither of the trial court's reasons for denial were legally supportable. Second, she claims that the trial court erred in ruling on the propriety of punitive damages because such judgment was premature in light of the court's denial of Markeson's motion to reduce the compensatory damage award.

## A. Application of Section 537.060

Section 537.060 provides, in pertinent part:

> When an agreement by release . . . is given in good faith to one of two or more persons liable in tort for the same injury or wrongful death, . . . such agreement shall reduce the claim by the stipulated amount of the agreement, or in the amount of consideration paid, whichever is greater.

The trial court found that the statute did not allow for reduction in Markeson's case because MM Investments (the dram shop) was not "liable in tort" and because public policy, as suggested by section 537.053 (the Dram Shop Act), precluded any reduction favoring an intoxicated driver.

### 1. Liability under the Dram Shop Act is liability in tort.

The trial court found, in accordance with Payne's suggestion, that establishments subject to liability under the Dram Shop Act are not "liable in tort"; thus, any settlement reached with such an establishment does not entitle remaining non-settling defendants to reduction of a subsequent verdict.[4] Because the crux of Payne's argument (and the trial court's judgment) is that claims pursuant to the Dram Shop Act are not torts, we must first discern what constitutes a tort.

---

[4] The trial court was correct in its determination that section 537.060 applies only to those liable in tort. *See Peltzman v. Beachner*, 900 S.W.2d 677, 679 (Mo. App. W.D. 1995) (refusing to apply section 537.060 to allow for a verdict reduction where settling party could not be classified as a tortfeasor, because the settling party's liability was based upon contract, not tort).

5

"A tort is defined to be a civil or private wrong or injury." *Merrill v. City of St. Louis*, 83 Mo. 244, 255 (Mo. banc 1884). "It consists of 'injuries of omission or commission done to individuals.'" *Id.* (quoting 1 Hill On Torts, 1). "The traditional and foremost policy of the tort law is to deter harmful conduct and to ensure that innocent victims of that conduct will have redress." *Elam v. Alcolac, Inc.*, 765 S.W.2d 42, 176 (Mo. App. W.D. 1988); *accord*, *Roedder v. Callis*, 375 S.W.3d 824, 830 (Mo. App. E.D. 2012) ("A primary function of tort law is to provide compensation to injured persons.").

"Tort law focuses on three basic elements: duty, breach and damages."[5] *L.A.C. ex rel. D.C. v. Ward Parkway Shopping Center Co., L.P.*, 75 S.W.3d 247, 257 (Mo. banc 2002). "A [f]undamental test of whether one person has a cause of action in tort against another is: Did the person, sought to be held liable, owe to the person, seeking to recover, any duty, to do something he did not do, or not to do something he did do?" *Lowery v. Kansas City*, 85 S.W.2d 104, 110 (Mo. 1935). "If so, his failure to do what he ought to have done or his doing what he ought not to have done constitutes a legal wrong, whether it be intentional or merely negligent, for which the person injured thereby can recover . . . ." *Id.* "Most frequently such duty arises from the relations in which the parties are placed, toward each other, by the circumstances of the case." *Id.* But they are not limited by circumstance. *Id.* "Duties, which may be the basis of a tort action, may . . . [also] be created in some other manner . . . . For example, they may be imposed by statute or ordinance." *Id.* "If so, and a violation of such prescribed rule of conduct is shown, it is not necessary to inquire what duty would arise from the circumstances . . . ." *Id.* In short, torts generally involve "an action for recovery of money . . . and involve[] issues of fact,

---

[5] The elements of a tort have also been described as "duty, breach, causation, [and] damages." *Collins-Camden P'ship, L.P. v. Cnty. of Jefferson*, 425 S.W.3d 210, 214 (Mo. App. E.D. 2014). It is unclear whether "causation" is its own separate element or is merely part of proving "damages." *See Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 862 (Mo. banc 1993) ("Mere logic and common sense dictate[] that there be some causal relationship between the defendant's conduct and the injury or event for which damages are sought.").

6

'whether the right or liability is one at common law or is one created by statute.'" *State ex rel. Diehl v. O'Malley*, 95 S.W.3d 82, 87 (Mo. banc 2003) (quoting *Briggs v. St. Louis & S.F. Ry. Co.*, 20 S.W. 32, 33 (Mo. 1892)).

The Dram Shop Act provides, in pertinent part:

> a cause of action may be brought by or on behalf of any person who has suffered personal injury or death against any person licensed to sell intoxicating liquor by the drink for consumption on the premises when it is proven by clear and convincing evidence that the seller knew or should have known that intoxicating liquor was served to a person under the age of twenty-one years or knowingly served intoxicating liquor to a visibly intoxicated person.[6]

§ 537.053.2. The Act contains the three basic elements of tort law. First, it imposes a duty on dram shops to refrain from serving alcohol to those who are either visibly intoxicated or under the age of 21. § 537.053.2. (These acts constitute a misdemeanor under section 311.310.1, which creates the duty for which liability is imposed in section 537.053.2.)[7] Second, it imposes liability for a breach of that duty by authorizing a private cause of action against the dram shop.[8] *Id*. And finally, it requires damages resulting from the breach of that duty in the form of either personal injury or death. *Id*. Thus, it appears to create liability in tort.[9]

---

[6] "[A] person is 'visibly intoxicated' when inebriated to such an extent that the impairment is shown by significantly uncoordinated physical action or significant physical dysfunction." § 537.053.3. Though blood alcohol content does not constitute prima facie evidence of visible intoxication, it is relevant to the determination. *Id*.

[7] *See Lambing v. Southland Corp.*, 739 S.W.2d 717, 719 (Mo. banc 1987) (noting that section 311.310 gives rise to a cause of action "under the limited circumstances provided in Section 537.053").

[8] Who may bring a private cause of action is, however, limited. Section 537.053.4 expressly excludes the intoxicated individual, if he or she is over the age of 21, along with his or her dependents, personal representative, or heirs from bringing a claim against the dram shop for either personal injury or death proximately caused by the individual's own voluntary intoxication.

[9] It appears that Missouri courts have historically treated dram shop claims as tort claims. *See, e.g., Simpson v. Kilcher*, 749 S.W.2d 386, 394 (Mo. banc 1988) (referring to dram shop claim as "a rule of tort law"), *overruled on other grounds by Kilmer v. Mun*, 17 S.W.3d 545 (Mo. banc 2000); *Dunaway by Dunaway v. Fellous*, 842 S.W.2d 166, 168 (Mo. App. E.D. 1992) (analyzing choice of law on dram shop claim under the "principal contacts" rule applied to issues in tort); *Elliot v. Kesler*, 799 S.W.2d 97, 103-04 (Mo. App. W.D. 1990) (finding that punitive damages were applicable to a dram shop claim); *Carver v. Schafer*, 647 S.W.2d 570, 574 (Mo. App. E.D. 1983) (referring to dram shop and intoxicated individual as "joint tortfeasors"). Though the 1986 version of section 537.053 expressly abrogated the holding of *Carver*, it did so "in favor of prior judicial interpretation finding the consumption of alcoholic beverages, rather than the furnishing of alcoholic beverages, to be the proximate cause of injuries inflicted upon another by an intoxicated person." Thus, the statute did not abrogate the Eastern District's

7

The basis for Payne's argument that dram shop liability is not liability in tort is two-fold: (1) the Dram Shop Act has no basis in common law and is *sui generis*; and (2) torts require proximate causation, which is expressly eliminated from dram shop liability. We will address her second claim first.

## Proximate Cause

Subsection 1 of the Dram Shop Act states: "it has been and continues to be the policy of this state . . . to follow the common law rule that furnishing alcoholic beverages is not the proximate cause of injuries inflicted by intoxicated persons." § 537.053.1. Payne relies on this language to support her argument that dram shop liability exists in the absence of proximate cause, and therefore cannot sound in tort. We disagree.

"Any attempt to find liability absent actual causation is an attempt to connect the defendant with an injury or event that the defendant had nothing to do with." *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 862 (Mo. banc 1993). "Mere logic and common sense dictate[] that there be some causal relationship between the defendant's conduct and the injury or event for which damages are sought." *Id*. Proximate cause generally requires "that the injury . . . be a reasonable and probable consequence of the act or omission of the defendant." *Id*. at 865. "Proximate cause is commonly defined by the courts as that cause that, in a natural and continuous sequence, unbroken by any efficient intervening cause, produced the result complained of, and without which the result would not have occurred." *Kilmer v. Mun*, 17 S.W.3d 545, 551 n.19 (Mo. banc 2000). "In the context of dram shop liability, the death . . . [or injury] may have been the direct result of the negligence of the intoxicated driver as well as the wrongdoing of the tavern operator in serving liquor to an obviously intoxicated person." *Id*.

conclusion that, to the extent there was liability, it was liability in tort, rendering a dram shop and its intoxicated patron joint tortfeasors, subject to section 537.060.

8

Although subsection 1 expressly identifies Missouri's common law rule that "furnishing alcoholic beverages is not the proximate cause of injuries inflicted by intoxicated persons," the first phrase in subsection two—the subsection authorizing a cause of action—expressly alters this common law rule: "*Notwithstanding subsection 1 of this section*, a cause of action may be brought by or on behalf of any person who has suffered personal injury or death . . . ." § 537.053.2 (emphasis added). And, as noted by the Missouri Supreme Court, "[m]ere logic and common sense dictate[] that there be some causal relationship." *Callahan*, 863 S.W.2d at 862.

To demonstrate that proximate cause is required to impose liability upon a dram shop, the following example is illustrative: imagine Dram Shop knowingly serves alcohol to visibly intoxicated Patron. Patron subsequently drives home, but because Patron is intoxicated, Patron is involved in a fender bender with Victim (an unrelated third party). Victim is not injured during the accident, but is subsequently injured when inadvertently shutting the car door on her own hand after exchanging insurance information with Patron.

Under Payne's interpretation of section 537.053.2, Victim could sue Dram Shop for her injured hand because Victim is a "person who has suffered personal injury," Dram Shop is a "person licensed to sell intoxicating liquor," and Dram Shop "knowingly served intoxicating liquor to [Patron,] a visibly intoxicated person." It would be irrelevant to the cause of action whether Victim's hand injury was a "reasonable and probable consequence" of Dram Shop's act of furnishing alcohol to Patron because—according to Payne—proximate cause is not an element of liability under the Dram Shop Act.

This is plainly an absurd result and one that ignores the introductory language of subsection 2. "We must presume that the legislature does not enact meaningless provisions or intend absurd results." *Star Dev. Corp. v. Urgent Care Assocs., Inc.*, 429 S.W.3d 487, 496 (Mo.

9

App. W.D. 2014). Payne's interpretation would require us to do both. Accordingly, it is rejected. While subsection 1 states the general rule that "furnishing alcoholic beverages is not the proximate cause of injuries inflicted by intoxicated persons," subsection 2 provides a limited exception to that rule in favor of injured third parties under specified circumstances.

### Dram Shop Act: Statutory or Based in Common Law?

We turn now to Payne's other argument—that liability under the Dram Shop Act is not liability in tort because dram shop liability is statutory, *sui generis*,[10] and unknown at common law. To begin, it appears that Payne's argument is premised upon a false dichotomy—namely that, in order for a cause of action to sound in tort, it must have been an action at common law and not one created by statute.[11] As noted by the Missouri Supreme Court, duties giving rise to tort liability can have their genesis either in the common law or in statute. *Diehl*, 95 S.W.3d at 87; *Lowery*, 85 S.W.2d at 110. The fact that a duty giving rise to liability is found in statute does *not* indicate that the statutory duty is outside the realm of tort law. Were it otherwise, there would be no such tort theory as negligence per se.[12]

---

[10] "Sui generis" means "[o]f its own kind or class; unique or peculiar." BLACK'S LAW DICTIONARY 1572 (9th ed. 2009).

[11] Payne's argument relies on the "'well established principle that when a statute creates a new right . . . that did not exist at common law . . . , and also provides a specific remedy for the enforcement thereof, that statutory remedy is exclusive.'" *Auto Owners (Mut.) Ins. Co. v. Sugar Creek Mem'l Post No. 3976*, 123 S.W.3d 183, 191 (Mo. App. W.D. 2003) (quoting *Von Ruecker v. Holiday Inns, Inc.*, 775 S.W.2d 295, 299 (Mo. App. E.D. 1989)). This principle, however, does not support Payne's argument, and in fact is irrelevant to the issue at hand. The principle means only that, to the extent that a purely statutory cause of action provides specific remedies, it is only those remedies and no others that may be pursued. Even assuming that the Dram Shop Act is purely statutory, the Act does not speak to specific remedies. Even if it did, we fail to see how this would mean that liability under the Act does not sound in tort. The only effect of specific remedies is to limit the remedies available upon a finding of liability. It is wholly irrelevant to the question of whether liability under the Dram Shop Act is liability in tort.

[12] "'[T]he violation of a statute, which is shown to be the proximate cause of the injury, is negligence *per se.*'" *Dibrill v. Normandy Assocs., Inc.*, 383 S.W.3d 77, 84 (Mo. App. E.D. 2012) (quoting *Imperial Premium Fin., Inc. v. Northland Ins. Co.*, 861 S.W.2d 596, 599 (Mo. App. W.D. 1993)). "Negligence per se arises when the legislature pronounces in a statute what the conduct of a reasonable person must be and the court adopts the statutory standard of care to define the standard of conduct of a reasonable person." *Id.* As discussed in note 7, *supra*, section 311.310.1 provides the source for the duty giving rise to liability under the circumstances identified in section 537.053.2. *Lambing*, 739 S.W.2d at 719. "To establish a claim of negligence per se, the plaintiff must plead the following four elements: (1) the defendant violated a statute or regulation; (2) the injured plaintiff was a member of the class of persons intended to be protected by the statute or regulation; (3) the injury complained of

10

In any event, Payne's argument is factually inaccurate because the Dram Shop Act *does* have common law origins. To address this claim, a brief history of the Dram Shop Act is in order.

"Under the original common law of Missouri, a tavern owner could not be held liable for injuries to third parties caused by an intoxicated person." *Auto Owners (Mut.) Ins. Co. v. Sugar Creek Mem'l Post No. 3976*, 123 S.W.3d 183, 190 (Mo. App. W.D. 2003).[13] In 1929, the legislature enacted Missouri's first dram shop law, imposing unrestricted liability on those who sold alcoholic beverages. § 4487, RSMo 1929. It is no coincidence that this enactment coincided with the period of prohibition. "In 1934, the Missouri legislature repealed a Dram Shop Act that had provided a civil remedy against bar and tavern owners for injuries caused by their intoxicated patrons." *Auto Owners*, 123 S.W.3d at 190-91. "The repeal of the dram shop act did not alter the common law; instead, the repeal of the dram shop act restored questions of dram shop liability to the arena of the common law and the transfiguring touch of the courts." *Lambing v. Southland Corp.*, 739 S.W.2d 717, 718 (Mo. banc 1987). "Until 1983, the common

___

was of the kind the statute or regulation was designed to prevent; and (4) the violation of the statute or regulation was the proximate cause of the injury." *Dibrill*, 383 S.W.3d at 84-85. It appears that section 537.053.2 is actually a recognition of dram shop liability premised upon a negligence per se theory. The duty is one created by statute (section 311.310), and section 537.053.2 defines who the statute was designed to protect (injured third parties, but not intoxicated individuals over the age of 21), the kind of injuries the statute was designed to prevent (personal injury or death), and requires the furnishing of alcohol to be the proximate cause of those injuries ("Notwithstanding subsection 1 of this section," wherein furnishing was declared *not* to be the proximate cause).

[13] *But see Skinner v. Hughes*, 13 Mo. 440, 443 (1850) (upholding liability of a dram shop to a slave owner for providing alcohol to a slave, who later died as a result of his intoxication; the court found that "the death of the slave [w]as the natural consequence of the act of the defendants in providing him with the means of intoxication."). Because the plaintiff in *Skinner* was the slave owner, and because there was a statute prohibiting the sale of alcohol to a slave absent the owner's consent, some regard this case as one sounding in property, rather than tort. *See* Anthony L. Roberts, MISSOURI DRAM SHOP LAW: ITS HISTORY AND NEW DIRECTION, 59 J. Mo. B. 218, 218 (Sept.- Oct. 2003) (noting that *Skinner* "is generally considered to be anachronistic in that its holding is reflective of a property rights claim regarding the ownership of the slave as opposed to a personal injury claim"); *but see Lambing*, 739 S.W.2d at 719 n.2 (noting that the underlying claim in *Skinner* was "based not only on a statute which forbad the sale of intoxicants to slaves, *but [also] on common law principles of negligence*" (emphasis added); the court also held, however, that there was no common law right of action against a dram shop until the *Carver* decision in 1983); *Andres v. Alpha Kappa Lambda Fraternity*, 730 S.W.2d 547, 550 (Mo. banc 1987) (citing *Skinner* as "[t]he earliest reported Missouri case addressing the problem of furnishing alcoholic beverages and concomitant injury"). Nevertheless, "[t]he dram shop liability portion of *Skinner* has apparently never been overruled." *Kilmer*, 17 S.W.3d at 551.

law in Missouri did not recognize a cause of action against a tavern owner by a person injured by an intoxicated tavern patron." *Id*. at 719. "In 1983, however, the Court of Appeals, Eastern District, [in *Carver v. Schafer*, 647 S.W.2d 570 (Mo. App. E.D. 1983),] found a common law duty in tavern owners to refrain from serving intoxicated patrons and imposed liability for injuries resulting from a breach of that duty."[14] *Id*. "The reason for imposing this duty was to deter tavern owners from acting in a manner which would contribute to automobile accidents." *Spotts v. City of Kansas City*, 728 S.W.2d 242, 249 (Mo. App. W.D. 1987).

"In 1985, the Missouri legislature responded to the pronouncement of Missouri public policy by the judiciary in *Carver, Sampson,* and *Nesbitt*, by passing section 537.053, RSMo 1986, which expressly abrogated the holdings of those cases."[15] *Auto Owners*, 123 S.W.3d at 191. Nevertheless, the newly enacted section 537.053 could not operate retrospectively to

---

[14] The Eastern District's decision was based in part on two prior decisions from this court: *Sampson v. W.F. Enters., Inc.*, 611 S.W.2d 333 (Mo. App. W.D. 1980), and *Nesbitt v. Westport Square, Ltd.*, 624 S.W.2d 519 (Mo. App. W.D. 1981). *Sampson* and *Nesbitt* both recognized a cause of action against a dram shop under section 311.310 for serving alcohol to a minor who later injured himself. 611 S.W.2d at 336-37; 624 S.W.2d at 520. But the Missouri Supreme Court has declared that "*Carver* is the first case extending liability on common law concepts." *Lambing*, 739 S.W.2d at 719 n.1.

[15] The 1986 version of the Dram Shop Act provided as follows:

1. Since the repeal of the Missouri Dram Shop Act in 1934 . . . , it has been and continues to be the policy of this state to follow the common law of England as declared in section 1.010, RSMo, to prohibit dram shop liability and to follow the common law rule that furnishing alcoholic beverages is not the proximate cause of injuries inflicted by intoxicated persons.

2. This legislature hereby declares that this section shall be interpreted so that the holdings in cases such as *Carver v. Schafer*, 647 S.W.2d 570 (Mo. App. 1983); *Sampson v. W.F. Enterprises, Inc.*, 611 S.W.2d 333 (Mo. App. 1980); and *Nesbitt v. Westport Square, Ltd.*, 624 S.W.2d 519 (Mo. App. 1981) be abrogated in favor of prior judicial interpretation finding the consumption of alcoholic beverages, rather than the furnishing of alcoholic beverages, to be the proximate cause of injuries inflicted upon another by an intoxicated person.

3. Notwithstanding subsections 1 and 2 of this section, a cause of action may be brought by or on behalf of any person who has suffered personal injury or death against any person licensed to sell intoxicating liquor by the drink for consumption on the premises who, pursuant to section 311.310, RSMo, has been convicted, or has received a suspended imposition of the sentence arising from the conviction, of the sale of intoxicating liquor to a person under the age of twenty-one years or an obviously intoxicated person if the sale of such intoxicating liquor is the proximate cause of the personal injury or death sustained by such person.

12

extinguish a common law claim that existed as a result of the holding in *Carver*.[16] *Lambing*, 739 S.W.2d at 719; *Elliot v. Kesler*, 799 S.W.2d 97, 102 (Mo. App. W.D. 1990). Because the Dram Shop Act has common law origins, it is not a purely statutory cause of action. Thus, it is ultimately irrelevant whether such a distinction has any bearing on the question of whether dram shop liability sounds in tort.

In support of her argument, Payne relies on the Illinois Supreme Court case of *Hopkins v. Powers*, 497 N.E.2d 757 (Ill. 1986). In *Hopkins*, the Illinois Supreme Court addressed whether "a dramshop [that] contributes to the intoxication of a person who later causes injury is thereby 'liable in tort' for purposes of an action for contribution brought by the intoxicated party." *Id*. at 758.

The intoxicated individual had settled with various individuals and entities claiming resulting damage from his drunken driving; he then filed an independent action, under the authority of both Illinois's Dramshop Act[17] and its Contribution Act,[18] for contribution from the dramshop that had served him the alcohol on the day of the accident. *Id*. The dramshop argued that it was not "liable in tort" as required by the Contribution Act because the Dramshop Act did not create a statutory duty in tort and because there was no common law duty equivalent in Illinois either. *Id*. at 759. The dramshop concluded that "[i]n the absence of either a statutory or

---

[16] Though "[a] statute . . . may modify or abolish a cause of action that had been recognized by common law or by statute," *Kilmer*, 17 S.W.3d at 550, it may not operate retrospectively to deny an existing claim that accrued under the common law. *Lambing*, 739 S.W.2d at 719.

[17] At the time of the *Hopkins* decision, the Illinois Dramshop Act provided, in pertinent part: "'Every person who is injured in person or property by any intoxicated person, has a right of action in his or her own name, severally or jointly, against any person who by selling or giving alcoholic liquor, causes the intoxication of such person.'" *Hopkins v. Powers*, 497 N.E.2d 757, 758 (Ill. 1986) (quoting Ill. Rev. Stat. 1983, ch. 43, para. 135).

[18] The Illinois Contribution Act in effect at the time provided, in pertinent part: "'[W]here 2 or more persons are subject to *liability in tort* arising out of the same injury to person or property, . . . there is a right of contribution among them, even though judgment has not been entered against any or all of them.'" *Hopkins*, 497 N.E.2d at 758 (quoting Ill. Rev. Stat. 1983, ch. 70, para. 302(a)).

common law duty, . . . [it] [could not] be 'liable in tort' as required under the Contribution Act."
*Id.*

The Illinois Supreme Court agreed, citing a then-recent decision that it characterized as holding that liability under the Dramshop Act was "exclusive, *sui generis* nontort liability" because the statute contained no duty "to refrain from serving intoxicating beverages to a person who then becomes intoxicated and, as a result, injures innocent third persons," and no such duty existed at common law.[19] *Id.*

Though *Hopkins* appears to support Payne's argument, its holding is inconsistent with Missouri law. Unlike dram shops in Illinois, dram shops in Missouri have a duty—with roots in both common law (*Carver*) and statute (§ 311.310)—to refrain from serving alcoholic beverages to those who are visibly intoxicated and those who are under the age of 21. *Lambing*, 739 S.W.2d at 719 ("*Carver* recognized a common law cause of action against a tavern owner who served alcohol to an intoxicated patron who subsequently injured a third person"; "Section 311.310 . . . give[s] rise to a cause of action . . . under the limited circumstances provided in Section 537.053."). Thus, under the reasoning in *Hopkins*, dram shop liability in Missouri is, in fact, liability in tort.[20]

### 2. *Public policy does not bar application of section 537.060 in Markeson's favor.*

We turn now to the trial court's second reason for not applying section 537.060 to reduce the jury's verdict against Markeson. In support of the court's rationale, Payne argues that the public policy promoted by the Dram Shop Act is "to place the responsibility for an injured

---

[19] There were two dissents in *Hopkins*, and both challenged the majority's conclusion that there was no duty imposed upon the dram shop. *Hopkins*, 497 N.E.2d at 760, 760-63 (Ill. 1986) (Goldenhersh, J., and Simon, J., dissenting).

[20] In fact, this was implicitly recognized to be the case in *Millentree v. Tent Restaurant Operations*, 618 F.Supp.2d 1072 (W.D. Mo. 2009), where the District Court addressed the application of section 537.060 to limit a dram shop operator's right to seek contribution from the intoxicated patron joint tortfeasor who had already settled with the injured party.

party's damages on the drunk driver who caused them," and that, allowing a reduction of the verdict against Markeson would allow her to "escape the very responsibility the legislature intended to place upon her."

"Public policy may be understood as the working out of the values, norms and ideals of a society through the legal forms and the decision making process at all levels of government." *Murphy v. Timber Trace Ass'n*, 779 S.W.2d 603, 607 (Mo. App. W.D. 1989). Both common law and legislation can serve as sources of current public policy. *Id.* "Whether [a] new [legislative] enactment represents an extension or departure from extant public policy may be determined by reference to prior and existent statutes." *Id.* We find Payne's assertion of the public policy behind the Dram Shop Act to be both outdated and inaccurate.

In *Hays v. Royer*, 384 S.W.3d 330, 337 (Mo. App. W.D. 2012), we rejected an argument like Payne's that the Dram Shop Act evidenced "a public policy against holding other persons liable for the harm caused by an intoxicated person"; in other words, that the Dram Shop Act demonstrated a public policy of holding solely the intoxicated person responsible for any harm caused. We determined that, by rejecting a cause of action on behalf of the intoxicated individual, the Dram Shop Act was actually "carving out an exception to public policy," which otherwise allows recovery for harm, rather than "creating a blanket public policy," precluding *all* claims brought on behalf of an intoxicated individual.[21] *Id.*

In the cases decided before *Hays*, Missouri courts cited a different public policy behind the Dram Shop Act—one that would support Payne's argument and the trial court's judgment.[22]

---

[21] In *Hays v. Royer*, 384 S.W.3d 330, 337 (Mo. App. W.D. 2012), we refused to read into section 537.053 a broad public policy preventing recovery by an intoxicated driver so as to bar a claim of negligent entrustment of a motor vehicle made by an intoxicated entrustee.

[22] In *Carver*, the Eastern District, relying on section 311.310, declared that "[t]he public policy of Missouri is that intoxicated persons should not be served alcoholic beverages." 647 S.W.2d at 575, abrogated by § 537.053, RSMo 1986. Given the fact that the conduct prohibited by section 311.310 did not change following the decision in *Carver*, the public policy announced in *Carver* remains valid.

15

For example, in *Simpson v. Kilcher*, 749 S.W.2d 386, 392 (Mo. banc 1988), the Missouri Supreme Court indicated that, by eliminating dram shop liability on the theory that the consumption, as opposed to the furnishing, of alcoholic beverages was the proximate cause of resulting injuries, "the legislature made a policy decision to place responsibility for these accidents on the drunk driver." *See also Von Ruecker v. Holiday Inns, Inc.*, 775 S.W.2d 295, 298 (Mo. App. E.D. 1989). This statement of policy, however, was based upon the legislature's assertion in section 537.053.1 that "the policy of this state . . . [is] to prohibit dram shop liability," which it attempted to accomplish by declaring the furnishing of alcohol not to be the proximate cause of injuries. In overturning *Simpson*, however, the Missouri Supreme Court recognized that, though "[t]he legislature purports to eliminate dram shop liability in section 537.053.1[,] . . . in actuality it does not." *Kilmer*, 17 S.W.3d at 551. When reading the statute as a whole, "it is clear that the legislature did not abolish dram shop liability," at least not as to third parties under the circumstances laid out in section 537.053.2. *Id.* Though the legislature has effectively *precluded* dram shop liability as to intoxicated individuals over the age of 21, it has *reinforced* the common law dram shop liability identified in *Carver*, but limited the circumstances under which it applies through the enactment of section 537.053.2.

Thus, it can be said that the public policy behind the current Dram Shop Act is two-fold: (1) to place responsibility solely on an intoxicated individual for his or her own injuries; but (2) to recognize that dram shops bear some responsibility, in addition to intoxicated individuals, for injuries caused to unrelated third parties by intoxicated dram shop patrons and for injuries to the dram shop patrons themselves if they are under the age of 21.

16

The next question, then, is whether applying section 537.060 (the reduction statute) to reduce a verdict obtained by an injured third party against an intoxicated individual violates either of these policies.

Section 537.060 serves several purposes with respect to joint tortfeasors. First it makes joint tortfeasors, or "[d]efendants in a judgment founded on an action for the redress of a private wrong[,] . . . subject to contribution, and all other consequences of such judgment, in the same manner and to the same extent as defendants in a judgment in an action founded on contract." § 537.060. Second, it ensures that a release, given in good faith to one of multiple defendants, does not operate as a release of other defendants, where all defendants are "liable in tort for the same injury or wrongful death," unless provided by the terms of the release. *Id*. Third, it provides that a settlement agreement with one of multiple defendants liable in tort for the same injury or wrongful death "shall reduce the [remaining] claim by the stipulated amount of the agreement, or in the amount of consideration paid, whichever is greater." *Id*. Finally, it provides that a settlement agreement, entered under the circumstances identified, "shall discharge the tort-feasor to whom it is given from all liability for contribution or noncontractual indemnity to any other tort-feasor." *Id*. The specific purpose at issue in this case is the third (reduction) provision.

The reduction provision does not conflict with the Dram Shop Act's policy of holding the intoxicated individual responsible for his or her own injuries under the facts of this case. The injuries at issue here are those of a third party (Payne) and not those of the intoxicated individual (Markeson); thus, this policy of the Dram Shop Act is simply not implicated by the reduction provision.

17

The reduction provision is also not in conflict with the second policy behind the Dram Shop Act—the recognition that dram shops bear at least some of the responsibility for injuries incurred by third parties as a result of the acts of intoxicated dram shop patrons. Reduction does not preclude the recognition of dram shop responsibility; rather, it supports it by recognizing that both the dram shop and the intoxicated individual contributed to a single injury suffered by a third party. Additionally, the provision does not affect an injured third party's ability to obtain a complete recovery.

There is a long-standing and well-entrenched principle in tort law that "a plaintiff is entitled to only one satisfaction for the same wrong."[23] *Sanders v. Ahmed*, 364 S.W.3d 195, 213 (Mo. banc 2012). The purpose of section 537.060's reduction provision is to implement this principle. *Id.*; *Gibson v. City of St. Louis*, 349 S.W.3d 460, 465 (Mo. App. E.D. 2011). "Under common law, when a 'judgment for a wrong is rendered against one who is a joint tortfeasor, and the judgment is satisfied, the plaintiff cannot recover another satisfaction for the same wrong.'"[24] *Gibson*, 349 S.W.3d at 465-66 (quoting *Beare v. Yarbrough*, 941 S.W.2d 552, 555 (Mo. App. E.D. 1997)). "Generally, plaintiffs are not entitled to a double recovery of compensatory damages." *Echols v. City of Riverside*, 332 S.W.3d 207, 212 (Mo. App. W.D. 2010). The only exception we are aware of is the collateral source rule, which is inapplicable here.[25] *See Gaunt v. State Farm Mut. Auto. Ins. Co.*, 24 S.W.3d 130, 134 (Mo. App. W.D. 2000). "Thus, 'a plaintiff may pursue separate judgments against defendants that are jointly and severally liable for the full

---

[23] "Whether the claim is in contract or tort, the vice to be guarded against is a duplication of damages." *Bucksaw Resort, LLC v. Mehrtens*, 414 S.W.3d 39, 46 (Mo. App. W.D. 2013).

[24] "'The term ["]joint tortfeasor" includes a single indivisible harm caused by independent, separate, but concurring wrongful acts of two or more persons.'" *Gibson v. City of St. Louis*, 349 S.W.3d 460, 465 (Mo. App. E.D. 2011) (quoting *Beare v. Yarbrough*, 941 S.W.2d 552, 555 (Mo. App. E.D. 1997)).

[25] "The collateral source rule prevents a tortfeasor from reducing his liability to an injured person by proving that payments were made to the person from a collateral source." *Smith v. Shaw*, 159 S.W.3d 830, 832 (Mo. banc 2005). "The application of the collateral source rule prevents an alleged tortfeasor from attempting to introduce evidence at trial that the plaintiff's damages will be covered, in whole or in part, by the plaintiff's insurance." *Id.*

amount of plaintiff's damages, but, under the "one satisfaction" rule, may recover only one satisfaction for the losses.'"[26]  *Moore Auto. Group, Inc. v. Lewis*, 362 S.W.3d 462, 468 (Mo. App. E.D. 2012) (quoting 47 Am. Jur. 2d Judgments § 809 (2006)).

"[T]he proper construction of § 537.060 compels the conclusion that[,] when a plaintiff settles with one of two or more of the alleged joint tortfeasors and . . . the settlement is in excess of a subsequent jury verdict finding the . . . nonsettling tortfeasors liable . . . , the amount of the plaintiffs' 'claim' must be 'reduced' by the amount of the settlement." *Hampton v. Safeway Sanitation Servs., Inc.*, 725 S.W.2d 605, 611 (Mo. App. E.D. 1987).

> This conclusion, although to some, may seem to be a "windfall" to the non-settling defendant, is supported by the express language of § 537.060; by the authorities in other jurisdictions; by the scheme established in the Uniform Contribution Among Tortfeasors Act; is consistent with the purposes and intent of § 537.060; is recognized by the withdrawal of MAI 7.01; and is totally consistent with the common law general principle that a plaintiff is entitled to only one satisfaction for a "claim" for damages.

*Id.* To hold the converse would result in a windfall to the plaintiff. "While entitled to be made whole by one compensatory damage award, a party may not receive the windfall of a double recovery, which is a species of unjust enrichment . . . ." *R.J.S. Sec., Inc. v. Command Sec. Servs., Inc.*, 101 S.W.3d 1, 17 (Mo. App. W.D. 2003).[27]

Here, were we to affirm the judgment below and allow Payne to recover the $350,000 compensatory damage verdict against Markeson, Payne would receive a double recovery by receiving significantly more than the amount that the jury determined was needed to make her

---

[26] "In all tort actions for damages, if a defendant is found to bear fifty-one percent or more of fault, then such defendant shall be jointly and severally liable for the amount of the judgment rendered against the defendants. If a defendant is found to bear less than fifty-one percent of fault, then the defendant shall only be responsible for the percentage of the judgment for which the defendant is determined to be responsible by the trier of fact . . . ." § 537.067.1.

[27] Payne argues that, if there is to be a windfall, it should go to the plaintiff in this situation.  She cites numerous cases, mostly in the workers' compensation context, to support her claim.  We find these cases inapplicable, primarily because there is either no discussion of section 537.060, or the statute plainly does not apply to the factual scenarios presented because the parties at issue were not joint tortfeasors.

whole. This would not only conflict with the purpose of section 537.060, but also fail to support the purposes of the Dram Shop Act. In fact, it appears that the only purpose served by precluding reduction in this context would be to punish the intoxicated individual by denying her a benefit to which any other joint tortfeasor in her position would be entitled under the law.[28] The Dram Shop Act was not designed to provide a plaintiff with the windfall of a double recovery or to punish intoxicated individuals; its purpose is to ensure that an injured third party is *made whole* by those the statute deems responsible for the injuries. *See Nguyen v. Tilwalli*, 495 N.E.2d 630, 633 (Ill. App. 2d Dist. 1986) ("[T]he theory of recovery in a negligence action is focused upon compensation to the plaintiff for [her] injuries, not punishment of the defendant[s], and a plaintiff who has recovered for [her] damages has no basis to complain because a defendant benefitted from the setoff.") (internal citations omitted).[29]

Payne argues that, "if [her] settlement with the tavern is used to reduce her verdict against Markeson, then Markeson has received contribution from the bar for injuries her voluntary intoxication caused. This contribution is contrary to the public policy enunciated by the statute's prohibition against a voluntarily intoxicated person's claim against a dram shop." In making this argument, Payne fails to apprehend the distinction between contribution and reduction.

Contribution and reduction, though similar concepts, have decidedly distinct purposes. While both are designed to prevent unjust enrichment, the recipient of the unjust enrichment

---

[28] The only reason Markeson's liability for compensatory damages would be reduced to zero in this case is that the dram shop (MM Investments) overestimated the value the jury would place on Payne's damages. This will not be true in every case. In other words, the fact that Payne's settlement would have the effect of significantly limiting Markeson's out-of-pocket expenses does not suggest that the law has somehow failed to hold Markeson accountable for her conduct. The sole basis for any benefit in favor of Markeson is the dram shop's overestimation of its own liability.

[29] Illinois appears to use the term "setoff" in the same manner in which we use the term "reduction." The term, "setoff," however, means something different in Missouri. "'[S]et off' is not the affirmative defense of reduction by satisfaction that is codified in section 537.060." *Gibson*, 349 S.W.3d at 463 n.2. Rather, "set off" is "an independent action . . . generally found on a liquidated debt and used to discharge or reduce plaintiff's claim by an opposite claim arising from a transaction *extrinsic* to the plaintiff's cause of action." *Id*. (emphasis added).

sought to be avoided differs. "The right to contribution serves to rectify the unjust enrichment that occurs when one tortfeasor 'discharge[s] a burden which both in law and conscience was equally the liability of another.'" *Rowland v. Skaggs Companies, Inc.*, 666 S.W.2d 770, 773 (Mo. banc 1984) (quoting Leflar, *Contribution and Indemnity Between Tortfeasors*, 81 U. Pa. L. Rev. 130, 138 (1932)). Reduction, on the other hand, is designed to prevent the unjust enrichment that results from a *plaintiff* receiving a double recovery. *See Sanders*, 364 S.W.3d at 213; *R.J.S.*, 101 S.W.3d at 17. Though there may very well be a policy reason for precluding an intoxicated individual from seeking *contribution* from a dram shop—**an issue we need not and do not decide**—there appears to be no policy to support disallowing a reduction merely because it happens to benefit the intoxicated individual.

In sum, application of section 537.060 to reduce the compensatory damage award against Markeson to zero is contrary to neither statute nor public policy. Accordingly, the trial court erred in denying Markeson's motion to reduce the verdict.

Point I is granted.

### B. Punitive Damages

In her second point, Markeson claims that the trial court erred in determining that, even if it had reduced the compensatory damages to zero, Markeson would still be liable for punitive damages. Markeson claims that this determination was premature, and therefore improper, in light of the fact that the trial court refused to reduce the compensatory damage award. We disagree.

Markeson's claim of error revolves entirely around her assertion that the court's determination regarding punitive damages was "premature" because the court had not, in fact, reduced the compensatory damage award to zero. Though Markeson provides us with ample

authority supporting the claim that punitive damages are improper in the absence of a compensatory damage award, Markeson cites no authority to support the actual claim of error presented: that the court's decision was somehow "premature." "'Rule 84.04(d) requires that an Appellant provide appropriate citation to authority in support of his contentions. If no authority exists on the issue, an explanation for the absence of authority is required. If no explanation is given, we may consider the point to be abandoned.'" *Rios v. State*, 368 S.W.3d 301, 312 (Mo. App. W.D. 2012) (quoting *Roberts v. State*, 356 S.W.3d 196, 205 (Mo. App. W.D. 2011)).

In any event, we fail to see how a matter first raised by Markeson in response to the initial judgment, raised again with this Court in the first appeal, and raised yet again in her suggestions on remand, was somehow "premature" for the trial court's determination. To the contrary, the issue was plainly presented to the trial court for determination.

Regardless, Markeson has not been prejudiced by the court's alleged error. It is the existence—not the amount—of a compensatory damage award that opens the door for punitive damages. *Freeman v. Myers*, 774 S.W.2d 892, 894 (Mo. App. W.D. 1989) (holding that a jury's award of compensatory damages, even if canceled by a settlement credit, satisfies the requisite proof of compensatory damages so as to entitle a plaintiff to punitive damages as well). Thus, even with a reduction of the compensatory damage award to zero, the award itself still serves as proof of compensatory damages, even if Markeson is not required to pay them. Accordingly, the punitive damage award remains unchanged.

Point II is denied.

## Conclusion

The trial court erred in failing to apply the settlement amount Payne received from MM Investments, Inc., to the compensatory damage award she obtained against Markeson.

Because there are no factual disputes regarding the existence or amount of the settlement, we reverse the trial court's judgment and remand with instructions that it reduce the compensatory damage award to zero, in accordance with the mandate of section 537.060. The trial court did not err, however, in determining that a reduction of the compensatory damage award to zero would have no effect on the punitive damage award. Accordingly, the punitive damages awarded in the judgment are affirmed.

Karen King Mitchell, Judge

James Edward Welsh, Presiding Judge,
and Thomas H. Newton, Judge, concur.